

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-20-1999

# Securacomm v. Securacom Inc

Precedential or Non-Precedential:

Docket 97-5794

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Securacomm v. Securacom Inc" (1999). *1999 Decisions*. Paper 13.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/13

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 20, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5794

SECURACOMM CONSULTING INC.

v.

SECURACOM INCORPORATED; KUWAM CORPORATION;
WIRT D. WALKER, III,

v.

RONALD S. LIBENGOOD

SECURACOM INCORPORATED

v.

RONALD S. LIBENGOOD; CLIFFORD J. INGBER

SECURACOM INCORPORATED; KUWAM CORPORATION;
WIRT D. WALKER, III,
        Appellants

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Civil No. 95-cv-05393)
(Senior District Judge: Honorable Dickinson R. Debevoise)

Argued on June 26, 1998

Before: GREENBERG, ALITO, and MCKEE, Circuit Judges,

(Opinion Filed: January 20, 1999)

Arthur E. Newbold (ARGUED)
Michael Doluisio
Dechert, Price & Rhoads
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

Attorney for Appellants

Howard N. Aronson (ARGUED)
Robert B. Golden
Lackenbach, Siegel, Marzullo,
 Aronson & Greenspan, P.C.
One Chase Road
Scarsdale, New York 10583

Attorneys for Appellees

OPINION OF THE COURT

ALITO, Circuit Judge:

In this trademark infringement case, we are required to consider whether the District Court erred when it awarded the plaintiffs a percentage of the profits of the defendant corporation and then trebled that award and also assessed attorneys' fees. Central to these awards was the District Court's finding that the defendant corporation had willfully infringed the plaintiff's trademark. Because we conclude that the evidence does not support a finding of willful infringement, we reverse and remand for further proceedings.

I.

In 1980, Ronald Libengood lost his job in the Westinghouse corporate security department, and he then began a small company that he called SecuraComm Associates. SecuraComm Associates was a security systems consulting firm that consulted with clients, surveyed facilities, designed security systems, managed projects, reviewed bids and evaluations, developed training

programs, and presented security-related workshops. The firm deliberately refrained from arranging for the purchase and installation of equipment and from providing maintenance and technical support. The firm took this approach because many clients insisted on the separation of consulting from installation and support services so that the advice given would not be affected by conflicts of interest. Initially, most of SecuraComm Pennsylvania's business consisted of work for Westinghouse in Western Pennsylvania, but Libengood subsequently developed other clients in other areas.

Libengood formed the SecuraComm name from the terms "security" and "communications." When he coined this name, he was unaware of any other use of the word. All brochures, letters, and correspondence of his company bore the name SecuraComm Associates.

After losing Westinghouse as a client in 1992, Libengood incorporated his firm as SecuraComm Consulting, Inc. hereinafter ("SecuraComm Pennsylvania") and continued to do business through the corporation. Libengood was and is the president and major shareholder of SecuraComm Pennsylvania. After incorporation, the business expanded, but SecuraComm Pennsylvania remained a small company, with average annual revenues between 1992 and 1996 of slightly more than $250,000 per year. Since its inception, SecuraComm Pennsylvania has used the SecuraComm mark with Libengood's permission, and on January 1, 1995, Libengood and SecuraComm Pennsylvania entered into a formal licensing agreement.

In May 1993, Libengood applied for registration of the word "Securacomm" without reference to capitalization or stylization. Although the application was abandoned for a time, Libengood reinstated the application and received a registration on May 20, 1997. The registration application indicated a first use on January 1, 1980, and afirst use in interstate commerce on September 3, 1981.

The predecessor of the defendant corporation, now called Securacom Incorporated, was formed by Sebastian Cassetta, and in 1987 this company became affiliated with the large engineering firm of Burns & Roe. The company's

3

name was then changed to "Burns & Roe Securacom." In that same year, Libengood became aware of Burns & Roe Securacom as the result of a chance event at a conference in Washington, D.C., Libengood saw Cassetta throw into a fish bowl a business card bearing the name "Burns & Roe Securacom." Libengood then spoke with Cassetta during lunch, and Cassetta told him that he knew about Libengood's firm but that his attorneys had informed him that the similarity in the companies' names would not cause problems. Cassetta said that the use of "Securacom" preceded by the well known name "Burns & Roe" was not likely to cause confusion. He also noted that the two companies served different clienteles, since Burns & Roe Securacom engaged in upgrading security at overseas embassies and performed work in the nuclear field. Libengood took no action in response to this encounter.

In 1992, Burns & Roe Securacom hired Ronald Thomas as its chief executive officer, and within two days of Thomas's employment, Cassetta was fired. After Cassetta left, the company he had founded became independent of Burns & Roe when it received a substantial investment from entities including KuwAm Corporation, a venture capital firm of which defendant Wirt D. Walker, III, is a shareholder and officer. The new, independent company expanded its activities into the full range of security services.

In October 1992, a certificate of amendment wasfiled in the Delaware Secretary of State's Office, indicating that Burns & Roe Securacom had changed its name to Securacom Incorporated (hereinafter "Securacom New Jersey"). In November 1992, Securacom New Jerseyfiled a trademark application with the Patent and Trademark Office for the term "Securacom, Incorporated" for goods and/or services consisting of "large-scale security and facility management for businesses and government." This application alleged that the first use was in November 1992. Securacom New Jersey was denied federal registration because two other companies -- neither of which was SecuraComm Pennsylvania -- had filed applications to register names similar to "Securacom."

4

In January 1993, Libengood learned about Securacom New Jersey's name change, as well as its expanded business base. After consulting with an attorney, Libengood mailed Securacom New Jersey a cease and desist letter. Libengood and Thomas attempted to settle the controversy. Libengood proposed that Securacom New Jersey either (1) change its name and compensate SecuraComm Pennsylvania for the use of its mark, (2) purchase the Securacom mark from SecuraComm Pennsylvania, or (3) license the name from SecuraComm Pennsylvania. These negotiations continued for approximately one and one-half years until Libengood set a deadline of the end of 1994.

In November 1994, Libengood asked Thomas to share in the cost for appraising the Securacom mark. Thomas did not respond, and Libengood then went forward on his own. The appraiser estimated that the value of SecuraComm Pennsylvania's mark, together with the cost of changing its name, was $275,000. Libengood provided this appraisal to Thomas in May 1995.

In June 1995, Libengood informed Thomas that, since he had received no response from Securacom New Jersey, he would institute legal proceedings after 30 days. After some time, Thomas informed Libengood that he would have to deal with Walker, then the chairman of the board of Securacom New Jersey. When Libengood spoke with Walker, Walker became abusive and told Libengood that if he filed suit Walker would bury him financially and take everything he had.

Libengood filed suit against Securacom New Jersey in October 1995, alleging (1) service mark infringement, in violation of the Lanham Act, 15 U.S.C. S 1125; (2) false designation of origin, false description, and unfair competition, in violation of the Lanham Act, 15 U.S.C. S 1125; (3) common law infringement and unfair competition; and (4) appropriation of name, good will, and reputation, in violation of N.J.S.A. S 56:4-1, 2. In November 1995, Securacom New Jersey filed an answer and a third-party complaint against Libengood, and in December 1995, Libengood filed a third-party answer, defenses, and third-party counterclaims. These counterclaims included the

same four causes of action that SecuraComm Pennsylvania had asserted, plus a fifth count for libel.

At the same time, Securacom New Jersey's directors signed a document stating that Libengood's suit was meritless. The document specifically stated that Libengood was attempting to extort a payment of $275,000 from Securacom New Jersey. In November 1995, Walker signed a letter directing Securacom New Jersey's attorneys (1) to seek summary judgment and Rule 11 sanctions against Libengood and his attorneys; (2) to file suit against Libengood and his attorneys for extortion and RICO violations; and (3) to file complaints with various bar associations against Libengood's attorneys for unethical behavior in filing suit against Securacom New Jersey. Walker sent a copy of this letter to Libengood and his attorneys.

Securacom New Jersey's attorneys filed suit against Libengood and his attorney in New Jersey Superior Court in April 1996. This suit was removed to federal court and consolidated with Libengood's trademark infringement case, and the District Court dismissed the suit as frivolous. Securacom New Jersey also filed a service mark infringement suit against SecuraComm Pennsylvania in the District of Columbia Superior Court, but the District Court in New Jersey enjoined that action. Finally, the District Court stayed Securacom New Jersey's petition to cancel Libengood's trademark.

In May 1996, SecuraComm Pennsylvania and Libengood amended their complaints to add KuwAm Corporation and Walker as defendants. In July 1996, SecuraComm Pennsylvania added a libel count to its complaint. In August 1996, the new defendants filed an amended answer, counterclaims, and a third-party complaint. In addition to alleging various Lanham Act violations against SecuraComm Pennsylvania, the third-party complaint requested cancellation of Libengood's trademark registration if such registration occurred.

In October 1997, this case was tried before the District Court. At the close of trial, the Court enjoined Securacom New Jersey's use of the word "Securacom." The Court found

6

that confusion was likely because of the slight difference between the companies' businesses, 984 F. Supp. at 298-301, and the Court noted that this confusion was particularly problematic because it was crucial to SecuraComm Pennsylvania's business that it refrain from providing the integrated services that Securacom New Jersey furnished to its clients. Id. at 295-96. The Court also found that actual confusion had occurred on occasion and that the confusion had prejudiced SecuraComm Pennsylvania. Id. at 296. In addition, the Court extensively quoted Walker's unfavorable opinions about the civil justice system. Id. at 291, 293, 293-94, 295.

The District Court declined to enter an amount of compensatory damages because, while it was likely, according to the District Court, that SecuraComm Pennsylvania had suffered damages, the damages "[could] [ ]not be measured with reasonable precision." Id. at 303. Then, after finding that an award of Securacom New Jersey's profits was necessary to "deter[ ] . . . the kind of conduct in which all three defendants . . . engaged," the District Court awarded the plaintiffs 10% of Securacom New Jersey's gross profits. 984 F. Supp. at 303. The Court trebled this amount based on the "egregious circumstances" of the case. Id. Finally, the Court awarded attorneys' fees on the ground that Securacom New Jersey's conduct showed bad faith, fraud, malice, and knowing infringement. Id. The defendants appealed.

II.

In this appeal, Securacom New Jersey does not either challenge the District Court's finding of infringement or the order of injunctive relief. However, Securacom New Jersey strongly contests the District Court's finding that the infringement was willful. In addition, Securacom New Jersey challenges (a) the District Court's award of profits, which was based in large part on the finding of willful infringement, (b) the trebling of the award of profits, and (c) the award of attorney's fees. Securacom New Jersey also argues that Libengood did not have national trademark rights and that, therefore, the figures the District Court used to calculate profits were too large. We agree with

7

Securacom New Jersey that the record does not support a finding of willful infringement, and we therefore reverse the award of profits, the trebling of the award of profits, and the order awarding attorneys' fees. We remand the issue of the attorneys' fees to the District Court for further consideration.

Section 35 of the Lanham Act, 15 U.S.C. S 1117 provides:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under section 43(a), shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and 32 and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost of reduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

Though the standards for (1) awarding profits; (2) determining whether such an award should be enhanced; and (3) awarding attorneys' fees under the Lanham Act differ somewhat, the issue of willful infringement is central to each. See ALPO Petfoods, Inc. v. Ralston Purina Co., 913 F.2d 958, 968 (D.C. Cir. 1990) ("an award based on defendant's profits requires proof that the defendant acted willfully or in bad faith"); 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition S 30.91 at 30–148

8

n.6 (4th Ed. 1996) (willful infringement provides usual basis for enhancing profits award) (collecting cases); Ferrero U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 47 (3d Cir. 1991) (showing of bad faith, fraud, malice or willfulness necessary for award of attorneys' fees).1  Therefore, we will first address the District Court's finding that Securacom New Jersey willfully infringed SecuraComm Pennsylvania's mark.

A. Willful Infringement

Knowing or willful infringement consists of more than the accidental encroachment of another's rights. It involves an intent to infringe or a deliberate disregard of a mark holder's rights. The Second Circuit has aptly described willful infringement as involving "an aura of indifference to plaintiff's rights" or a "deliberate[ ] and unnecessar[y] duplicating [of a] plaintiff's mark . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." W.E. Bassett Co. v. Revlon, Inc., 435 F.2d 656, 662 (2d Cir. 1970) (citation omitted); see also Rolex Watch USA, Inc. v. Meece, 158 F.3d 816, 823 (5th Cir. 1998) ("willful infringement carries a connotation of deliberate intent to deceive.") (quoting Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1405 (9th Cir.), cert. denied, 510 U.S. 815 (1993)). We agree with Securacom New Jersey

_____

1. Willful infringement has a central role in the availability of each of these kinds of relief because of the relevance of equitable factors in determining their appropriateness on a given set of facts. See 15 U.S.C. S 1117 (1994) (collection of defendant's profits and award of enhanced damages "subject to principles of equity"); Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 131 (1947) (denying accounting of defendant's profits based on "equities of the case"); BASF Corp. v. Old World Trading Co., Inc., 41 F.3d 1081, 1096 (7th Cir. 1993) (discussing availability of enhanced damages under heading "equitable remedies"); Rolex Watch USA, Inc. v. Meece, 158 F.3d 818, 826 (5th Cir. 1998) (award of enhanced damages limited by "equitable considerations"); Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1314 (9th Cir. 1997) (citing to 15 U.S.C. S 1117(b) (court may award attorney fees in "exceptional cases") and noting that "equitable considerations" limit award of attorney fees).

that the record in this case cannot support a finding of willful infringement.2

First, we are constrained to conclude that the District Court committed clear error when it found that "Walker and the company he dominated . . . knowingly infringed [SecuraComm Pennsylvania's] mark . . .[f]or years before this action was commenced." 984 F. Supp. at 303-04. There is no direct evidence in the record that Securacom New Jersey knew about Libengood and his small firm before Libengood's cease and desist letter was sent in 1993. Thomas testified that he first learned about Libengood and his company at that time, and no direct evidence to the contrary has been called to our attention. Moreover, there is no circumstantial evidence from which it may reasonably be inferred that Securacom New Jersey learned about SecuraComm Pennsylvania prior to the cease and desist letter. It is true that Cassetta knew about Libengood and his company in 1987, but it is unreasonable under the circumstances to infer that Cassetta passed on this information to Securacom New Jersey's new management either directly or indirectly.

It is apparent that in 1987 neither Cassetta nor Libengood attached much significance to the similarities in the companies' names. Cassetta expressed the opinion that this similarity would not cause problems because his company's name included the name of the large firm "Burns & Roe" and because the companies worked in unrelated areas. It is telling that Libengood made no complaint about Cassetta's company for the next six years. Cassetta's attitude and Libengood's inaction strongly suggest that neither man thought that the matter was important. Thus, until at least 1992, Securacom New

_____

2. We review the District Court's finding of willful infringement for clear
error. See ISCYRA v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 752 (2d
Cir. 1996); Ferrero U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 48 (3d
Cir. 1991). Under this standard, a finding is"clearly erroneous when the
reviewing court on the entire evidence is left with the definite and firm
conviction that a mistake has been committed." Newark Branch, NAACP
v. City of Bayonne, 134 F.3d 113, 120 (3d Cir. 1997). We do not review
the evidence de novo, but we do consider whether there is enough
evidence in the record to support the District Court's factual findings.
Id.

Jersey reasonably believed the use of the Securacom mark did not infringe, and "[i]nfringement is not willful if the defendant might have reasonably thought that its proposed usage was not barred by the statute." Blockbuster Videos, Inc. v. City of Tempe, 141 F.3d 1295, 1300 (9th Cir. 1998) (internal quotation omitted).

The similarity in the companies' names became potentially more significant in 1992. At that time, Libengood changed the name of his company from "SecuraComm Associates" to "SecuraComm Consulting Inc." and expanded its client base. There is no evidence, however, that Cassetta or anyone else at Securacom New Jersey took notice of these changes. Also in 1992,"Burns & Roe Securacomm" changed its name to "Securacom Inc.," and the company expanded its business into new fields, but these events occurred after Cassetta left. Cassetta was fired two days after Thomas took over, and there is nothing to suggest that during these final two days Cassetta told Thomas or anyone else who remained with the firm about Libengood and his company -- a matter that, as noted, had not previously been regarded as troublesome. Under these circumstances, we see no reasonable basis for inferring that Cassetta directly or indirectly informed Securacom New Jersey's management about Libengood and his company.

Relying upon the general principle that the knowledge of a corporate officer is imputed to the corporation, the plaintiffs argue that Cassetta's knowledge of the existence of SecuraComm Pennsylvania should be imputed to Securacom New Jersey and that therefore Securacom New Jersey's use of its mark after the critical events of 1992 cannot be regarded as having been done in good faith. We reject this argument because we find it inconsistent with the equitable principles that make the question of willfulness important. Whether Securacom New Jersey engaged in willful infringement is significant because courts, looking to "the principles of equity," 15 U.S.C. S 1117, have held that a finding of willfulness or bad faith is important in determining whether to award profits, enhance damages, and award attorney fees. See page 7, supra. Under the circumstances here, plaintiffs' argument regarding imputed knowledge is inconsistent with the

11

equitable basis of these doctrines. As we have noted, neither Cassetta nor Libengood seemed concerned about the similarity between the names of their two companies when Cassetta's company was called "Burns & Roe Securacom" and the companies served different clienteles. As of the date of Cassetta's termination, neither of these factors had changed. The plaintiffs would have us combine what Cassetta knew (but, as far as the record shows, never passed on to the new management that fired him) with what new management subsequently knew regarding the company's change in name and range of services. The plaintiffs cite no direct supporting authority for this argument, and we find it inequitable under the circumstances present here.

Second, we conclude that Securacom New Jersey's failure to conduct a trademark search is not sufficient to support the finding of willful infringement. In Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749 (2d Cir. 1996), the Second Circuit stated that an alleged infringer's failure to conduct a full trademark search after its attorneys advise that such a search is warranted may evidence willful ignorance akin to willful infringement. But the Second Circuit emphasized in that case that the infringer's attorneys had specifically advised it to conduct a full search and that the infringer was aware when it adopted the mark that it was copying "authentic details" from the plaintiff's design. Id. at 753. In the present case, by contrast, SecuraComm Pennsylvania did not establish that Securacom New Jersey knew that it was copying SecuraComm's name. Similarly, there was no evidence that Securacom New Jersey's attorneys had advised Securacom to conduct a full trademark search. In the absence of these key details, it is unreasonable to conclude that Securacom New Jersey's failure to conduct a trademark search established willful ignorance akin to willful infringement. Rather, as far as the record reflects, Securacom New Jersey's failure to conduct a search was at most careless. See Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 480 (3d Cir. 1994); Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1993). And carelessness is not the same as deliberate indifference with respect to another's rights in a mark or a calculated attempt to benefit from another's goodwill. See W.E.

12

Bassett, 435 F.2d at 662. Therefore, Securacom New Jersey's failure to conduct a trademark search is sufficient to establish that its infringement was willful or intentional.

Third, Securacom New Jersey's failure to stop its use of the Securacomm mark after receiving Libengood's cease and desist letter does not demonstrate willful infringement. A defendant's refusal to cease using a mark upon demand is not necessarily indicative of bad faith. Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 962 (7th Cir. 1992), cert. denied, 507 U.S. 1042 (1993). This is particularly true when the trademark at issue is not registered. Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc., 921 F.2d 467, 472 (3d Cir. 1990). When Libengood sent the cease and desist letter, he did not have a federally registered mark. Libengood instructed Securacom New Jersey to cease using the Securacomm mark in early 1993, only ten days after he firstfiled to register his mark. The registration was not complete until May 20, 1997. In addition, since Securacom New Jersey had already been denied a trademark registration for the word "Securacom" because two other companies had attempted to register similar words, Securacom New Jersey had a reasonable ground for believing that SecuraComm Pennsylvania would also be unable to obtain federal registration in the name "Securacomm."

In addition to the absence of a federally registered trademark, Securacom New Jersey had other reasons to believe that it had a legal right to use Securacom. First, Securacom New Jersey had a reasonable basis for concluding that Libengood did not have nationwide trademark rights in the mark due to the localized nature of his business. Additionally, Securacom New Jersey had a plausible basis for believing that its use of its name was not likely to cause confusion. As a result, Securacom New Jersey's failure to stop using the Securacomm mark after receiving Libengood's cease and desist letter does not support a finding of willful infringement.

Finally, we agree with SecuraComm Pennsylvania that neither Walker's views regarding the civil justice system nor Securacom New Jersey's litigation tactics support the finding that Securacom New Jersey willfully infringed upon

13

Libengood's Securacomm mark. See SecuraComm Pennsylvania's Br. at 21 n. 6. There are other, appropriate remedies for abusive litigation tactics. Viewing all of the evidence together, we conclude that the record is insufficient to show that Securacom New Jersey willfully infringed upon SecuraComm Pennsylvania's mark and that the District Court's contrary finding was clearly erroneous.

B. Defendant's Profits[3]

Securacom New Jersey argues that the District Court abused its discretion when it awarded a portion of Securacom New Jersey's profits to SecuraComm Pennsylvania and then trebled this award.[4] The District Court concluded that an award of 10% of Securacom New Jersey's profits for the years in question was appropriate to deter a willful infringer such as Securacom New Jersey from such acts in the future. 984 F. Supp. at 303. The District Court then trebled the damages because of the "egregious circumstances of this case." Id.

Since the evidence does not support a finding that Securacom New Jersey willfully infringed Libengood's trademark rights, we conclude that the award of profits was not appropriate in the present case. The Lanham Act permits courts to award monetary damages to trademark owners as compensation where it is equitable to do so regardless of the willfulness of the defendant's

_____

3. When we refer to the District Court's award of profits in this case, we refer to its award of the defendant corporation's profits, in distinction to
an award of plaintiff's lost profits. The District Court awarded defendant's profits not plaintiff's profits. See 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition S 30.57 at 30-95 (noting "semantic confusion" in opinions discussing monetary recovery under S 1117: "the word profits is often used without revealing whose profits -- plaintiff's or infringer's -- are being discussed").

4. The District Court, at one time, described this award as a "royalty" without engaging in the analysis required to grant such an award. See A&H Sportswear Co. v. Victoria's Secret Stores, Inc., 967 F. Supp. 1457, 1479 (E.D. Pa. 1997). Both parties agree that the District Court's use of the word "royalty" was likely a shorthand description of Securacom New Jersey's profits. See Securacom New Jersey's Br. at 37; SecuraComm Pennsylvania's Br. at 30 n.10.

14

infringement. See 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition S 30.75 at 30-128 (4th Ed. 1996) ("Unlike recovery of defendant's profits, attorney fees and treble damages, no wrongful intent or state of mind is needed for the recovery of actual damages [under 15 U.S.C. S 1117(a).]"). In this case, however, the District Court awarded profits to deter defendant's assertedly egregious misconduct; a plaintiff must prove that an infringer acted willfully before the infringer's profits are recoverable. George Basch Co. v. Blue Corral, Inc., 968 F.2d 1532, 1537 (2d Cir.), cert. denied, 506 U.S. 991 (1992); see also, 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition S 30:62, at 30-102 (4th ed. 1996).

Once monetary damages have been awarded, the Lanham Act permits courts, under certain circumstances, to enhance the damages. 15 U.S.C. S 1117(a) (1994); see also 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, S 30:90 at 30-146 (4th Ed. 1996) Since the evidence at trial did not support a finding of willful infringement, the award of profits was not warranted, and trebling the damages was likewise inappropriate. See Caesar's World, Inc. v. Venus Lounge, Inc., 520 F.2d 269, 273 (3d Cir. 1995) (holding that enhanced damages award was inappropriate where no evidence of actual damages was adduced; "[t]hree times zero is zero."). We therefore reverse the award of profits and treble profits.5

C. Attorneys' Fees

Securacom New Jersey contends that the District Court improperly exercised its discretion in awarding attorneys' fees.6 The Lanham Act provides that a court may award reasonable attorneys' fees to the prevailing party when

_____

5. Securacom New Jersey argues that the District Court erred in awarding profits based on its national profits because Libengood did not have national trademark rights prior to the federal registration of his mark on May 20, 1997. Because we conclude that profits were not properly awarded in the present case, we need not reach this issue.

6. The Lanham Act gives the District Court the discretionary power to award attorneys' fees. 15 U.S.C. S 1117(a) (1994). We review the district court's award of attorneys' fees for abuse of discretion. Ferrero U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 48 (3d Cir. 1991).

15

"exceptional circumstances" exist. 15 U.S.C.S 1117(a). Our Court has interpreted "exceptional circumstances" to include culpable conduct on the part of the losing party, such as bad faith, fraud, malice or knowing infringement. Ferrero U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 47 (3d Cir. 1991). In this case, the District Court awarded attorneys' fees to SecuraComm Pennsylvania because Securacom New Jersey exhibited bad faith, fraud, malice, and knowing infringement. 984 F. Supp. at 303-04. Since the District Court's finding of willful infringement appears to be a substantial basis for the award of attorneys' fees, we are required to reverse and remand on the issue of whether exceptional circumstances, other than willful infringement, exist warranting an attorneys' fees award.

III.

Because the evidence in the record does not support the finding of willful infringement, we reverse the award of profits and attorneys' fees. We remand the issue of attorneys' fees for further consideration.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

16