**Louis Vuitton MALLETIER, Plaintiff,**

v.

**DOONEY & BOURKE, INC., Defendant.**

**No. 04 Civ. 2990(SAS).**

United States District Court, S.D. New York.

April 24, 2007.

Steven Kimelman, Michael A. Grow, Alison Arden Besunder, Arent Fox LLP, New York City, Theodore C. Max, Sheppard Mullin Richter & Hampton LLP, New York City, for Plaintiff.

Douglas D. Broadwater, Roger G. Brooks, Darin P. McAtee, Cravath, Swaine & Moore LLP, New York City, Thomas J. McAndrew, Thomas J. McAndrew & Associates, Providence, RI, for Defendant.

## OPINION & ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Louis Vuitton Malletier ("Louis Vuitton") brings this action against Dooney & Bourke, Inc. ("Dooney & Bourke") alleging trademark infringement, dilution and unfair competition claims under various state and federal laws.[1] At the request of the Court, the parties submitted briefs on two distinct legal issues: (1) whether, with respect to Louis Vuitton's federal trademark infringement claim, Louis Vuitton must

---

1. Specifically, Louis Vuitton asserts claims for: (1) trademark infringement under section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) unfair competition and false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) trademark dilution under the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c); (4) trademark infringement and unfair competition under New York common law; and (5) trademark dilution and injury to business reputation under section 360-1 of the New York General Business Law. *See* Complaint ("Compl.") ¶ 1. Section 1125 of title 15 of the United States Code (the "Code") is the equivalent of section 43 of the Lanham Act. Unless otherwise noted, all citations herein are to provisions of title 15 of the Code.

prove that Dooney & Bourke acted with willful deceit in order to recover an award of Dooney & Bourke's profits; and (2) whether, with respect to Louis Vuitton's federal dilution claim, Louis Vuitton must show actual damages (*i.e.*, monetary harm) in order to be entitled to monetary relief. For the reasons stated below, the Court answers both questions in the affirmative.[2]

## II. APPLICABLE LAW

### A. Profit Awards for Trademark Infringement Under 15 U.S.C. § 1125(a)

■ Section 1125(a) provides, in relevant part:

Any person who, on or in connection with any goods ... uses in commerce any word, term, name, symbol ... or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods ... by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[3]

"This provision protects what is known as a product's 'trade dress' or packaging, which 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, [or] graphics.' "[4] In order to establish a defendant's liability for infringing upon an inherently distinctive trade dress, a plaintiff must demonstrate that the defendant's trade dress "will likely mislead consumers as to the source of the goods."[5]

The remedies for trademark infringement under section 1125(a) are set forth in section 1117(a), which provides, in pertinent part:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a), (c), or (d) of this title, *or a willful violation under section 1125(c)* of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled ... subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.[6]

Prior to 1999, section 1117(a) expressly provided for monetary recovery only upon the establishment of "a violation under section 1125(a)." In August 1999, Congress amended section 1117(a) to include "a willful violation under section 1125(c)," which prohibits the dilution of famous marks.[7]

■ The relief presently in issue is the second form of relief listed in section

---

**2.** For a thorough discussion of the factual background of this litigation, *see Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 340 F.Supp.2d 415, 419–28 (S.D.N.Y.2004), *vacated in part on other grounds*, 454 F.3d 108 (2d Cir.2006).

**3.** 15 U.S.C. § 1125(a)(1).

**4.** *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1535 (2d Cir.1992) (quoting *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985)).

**5.** *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)).

**6.** 15 U.S.C. § 1117(a). This section is titled "Recovery for violation of rights; profits, damages and costs; attorney fees; treble damages; election." *Id.*

**7.** Pub.L. No. 106–43, 113 Stat. 218 (1999) ("1999 Amendment"). Later in 1999, Congress further amended the provision to include violations of section 1125(d), concerning cyberpiracy. *See* Pub.L. No. 106–113, 113 Stat. 1501 (1999).

1117(a), profit awards.[8] This Circuit's law relating to profit awards was set forth in *George Basch Co. v. Blue Coral, Inc.,* which held that "a finding of defendant's *willful deceptiveness* is a prerequisite for awarding profits" in federal trademark infringement suits.[9] In its analysis, the Second Circuit noted that although section 1117(a) does not contain an explicit scienter requirement, and rather grants courts "equitable latitude" to authorize profit awards, this latitude must nevertheless "operate within legally defined parameters."[10] To establish these parameters, the Second Circuit engaged in a thoughtful analysis of the historical origin of an award of profits and the policy rationales that support such awards.[11] The court ultimately concluded that "in order to justify an award of profits, a plaintiff must establish that the defendant engaged in willful deception."[12]

█ Although "[a] finding of bad faith, or willful deceptiveness, is necessary to warrant an accounting [of profits]," it "may not be sufficient."[13] To determine whether "on the whole, the equities weigh in favor of an accounting" of defendant's profits, additional considerations include

"(1) the degree of certainty that the defendant benefited [sic] from the unlawful conduct, (2) availability and adequacy of other remedies, (3) the role of a particular defendant in effectuating the infringement, (4) plaintiff's laches; and (5) plaintiff's unclean hands."[14]

The Second Circuit has not revisited its holding in *Blue Coral* since the 1999 Amendment. As fully discussed below, the parties vigorously dispute whether, in light of the amendment, *Blue Coral's* willfulness requirement remains good law.

## B. Monetary Remedies for Dilution Under 15 U.S.C. § 1125(c)

Prior to October 2006, the federal dilution statute, 15 U.S.C. § 1125(c), entitled the owner of a famous mark to injunctive relief if "another person's commercial use in commerce of a mark or trade name . . . *causes* dilution of the distinctive quality of the [famous] mark."[15] The statute provided further that the owner of a famous mark "shall be entitled *only to* injunctive relief . . . unless the person against whom the injunction is sought *willfully* intended to trade on the owner's reputation or to cause dilution of the famous mark. If such

---

**8.** With respect to damages, it is "well settled" that a plaintiff will be entitled to damages upon establishing either "actual consumer confusion or deception resulting from the violation, or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." *Blue Coral,* 968 F.2d at 1537 (quotations and citations omitted). With respect to attorneys' fees, "[i]n this Circuit, attorneys' fees are awarded for Lanham Act violations only if there is a showing of bad faith or fraud." *Johnson & Johnson Vision Care Inc. v. CIBA Vision Corp.,* No. 04 Civ. 7369, 2006 WL 2128785, at *4 (S.D.N.Y. July 28, 2006) (citing *Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 194 (2d Cir.1996)).

**9.** 968 F.2d at 1538 (emphasis added).

**10.** *Id.* at 1537.

**11.** *See id.* at 1537–41.

**12.** *Id.* at 1540. *Accord International Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749, 753 (2d Cir.1996) ("In order to recover . . . an infringer's profits, a plaintiff must prove that the infringer acted in bad faith." (citation omitted)).

**13.** *Mastercard Int'l Inc. v. First Nat'l Bank of Omaha,* No. 02 Civ. 3691, 2004 WL 326708, at *11 (S.D.N.Y. Feb. 23, 2004) (citing *Blue Coral,* 968 F.2d at 1540).

**14.** *Blue Coral,* 968 F.2d at 1540.

**15.** 15 U.S.C. § 1125(c)(1) (effective until Oct. 5, 2006) (emphasis added).

*willful intent* is proven, the owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a). . . ." [16]

■ Last October, Congress enacted the Trademark Dilution Revision Act of 2006 ("TDRA"), which struck the existing dilution statute in its entirety.[17] The current statute now provides, in pertinent part:

> In an action brought under this subsection, the owner of a famous mark shall be entitled to injunctive relief as set forth in section 1116 of this title. The owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) . . . [if] the mark or trade name that is *likely to cause* dilution by blurring or dilution by tarnishment *was first used in commerce by the person against whom the injunction is sought after October 6, 2006;* and . . . the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark; or . . . willfully intended to harm the reputation of the famous mark.[18]

Thus, the new statute relaxed the burden of proof required to obtain monetary relief on a federal dilution claim. Whereas the owner of a famous mark previously had to establish actual dilution,[19] now only a likelihood of dilution is required.

## III. DISCUSSION

### A. *Blue Coral's* Willfulness Requirement Remains Good Law

■ Louis Vuitton argues that the Second Circuit's ruling in *Blue Coral* has been "effectively overruled," by the 1999 Amendment to the Lanham Act.[20] Therefore, according to Louis Vuitton, a plaintiff who has successfully established a defendant's infringement liability is no longer required to show willful intent in order to recover defendant's profits.[21] The 1999 Amendment, however, did not alter or even address the relevant subsections of the federal trademark infringement statute [section 1125(a)]. It also left section 1117(a)'s cross-reference to section 1125(a) undisturbed. Thus, the pre-existing law in this Circuit requiring willful intent as a prerequisite for awarding profits remains sound and controlling.[22]

16. *Id.* § 1125(c)(2) (emphases added).

17. *See* Pub.L. No. 109–312, 120 Stat. 1730 (2006).

18. 15 U.S.C. § 1125(c)(5) (emphasis added).

19. *See, e.g., Savin Corp. v. Savin Group,* 391 F.3d 439, 452–53 (2d Cir.2004) (discussing the "actual-dilution element" of a federal dilution claim).

20. Louis Vuitton's Memorandum of Law in Opposition to Defendant Dooney & Bourke's Memorandum ("Pl.Mem.") at 2.

21. In arguing that *Blue Coral* has been overruled, Louis Vuitton muddies the waters by misphrasing its holding. For example, Louis Vuitton states that the 1999 Amendment supersedes *Blue Coral's* "requirement that a plaintiff make a prerequisite showing of either actual confusion or deception or that the

defendants' [sic] actions were 'willful' in order to recover monetary damages on a trademark infringement claim." *Id.* Louis Vuitton thus conflates section 1117(a)'s distinction between damages and profits, and thereby obfuscates Circuit law, which has never required willfulness as a precondition for recovering damages on an infringement claim. *See Blue Coral,* 968 F.2d at 1540 ("We underscore that in the absence of . . . showing [willfulness], a plaintiff is not foreclosed from receiving monetary relief.").

22. *See Mastercard,* 2004 WL 326708, at *11 (concluding that the 1999 Amendment did not effect this Circuit's long-standing precedent of limiting profit awards in trademark infringement actions to plaintiffs who establish that the infringement was committed with willful intent). *But see Nike Inc. v. Top Brand Co.,* No. 00 Civ. 8179, 2005 WL 1654859, at *10 (S.D.N.Y. July 13, 2005) (holding that Con-

At the time of the 1999 Amendment to section 1117(a), the "dominant view" amongst courts, including this Circuit, embraced a finding of willfulness as a prerequisite to awarding profits in trademark infringement actions.[23] Because the 1999 Amendment did not alter or even address the language of section 1125(a) concerning infringement, or the language of section 1117(a) concerning monetary remedies for infringement, I "presume[ ] that Congress's inclusion, without alteration, of the language concerning Section 1125(a) incorporates the existing judicial interpretation of that language."[24] In other words, the addition of "willful violation under section 1125(c)," does not indicate that it was Congress's intention to simultaneously *sub silentio* overturn the weight of authority with respect to section 1125(a).

gress's inclusion of the term 'willful' in relation to section 1125(c), but not section 1125(a), indicates Congress's rejection of willfulness as a prerequisite to recovering profits for infringement). *See supra* n. 6. Only two Circuits have considered whether the 1999 Amendment affected existing standards for awarding profits in infringement actions. In *Quick Technologies v. Sage Group PLC*, 313 F.3d 338, 347–50 (5th Cir.2002), the Fifth Circuit declined to adopt a bright-line rule requiring plaintiffs to prove willfulness as a predicate to obtaining profits for violations of 1125(a). However, in so declining, the court relied only partially on the 1999 Amendment. *See id.* at 348 (recognizing that cases in sister circuits have conditioned profit awards upon a finding of willfulness, but finding these cases to be "of limited utility" because they were decided prior to the 1999 Amendment). The Fifth Circuit also relied on, and reaffirmed, its own pre-existing six-factor test for determining whether an accounting of profits is equitable. *See id.* at 348–50. In *Banjo Buddies Inc. v. Renosky*, 399 F.3d 168, 174–75 (3d Cir.2005), the Third Circuit concluded that the 1999 Amendment superseded the existing majority view requiring plaintiffs to establish an infringer's willful intent as a prerequisite to recovering profits. These rulings by the Third and Fifth Circuits have faced some criticism. *See, e.g.,* 5 *McCarthy on Trademarks and Unfair Competition* § 30:62 (4th ed.2006) (criticizing the interpretation of the 1999 Amendment adopted by the Third and Fifth Circuits as an "inaccurate" reading of Congressional intent and opining that Congress did not intend to alter existing law concerning infringement damages).

**23.** *Banjo Buddies*, 399 F.3d at 174. *See also Blue Coral*, 968 F.2d at 1537; *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 190 (3d Cir.1999); *Bishop v. Equinox*

*Int'l Corp.*, 154 F.3d 1220, 1223 (10th Cir. 1998); *Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir.1994); *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 968 (D.C.Cir.1990); *Restatement (Third) of Unfair Competition* § 37 (1995); 5 *McCarthy on Trademarks* § 30:62 (collecting cases).

**24.** *Mastercard*, 2004 WL 326708, at *11. In assessing the implications of amendments to existing statutory schemes, it is appropriate to "assume that Congress passed each subsequent law with full knowledge of the existing legal landscape." *In re Northwest Airlines Corp.*, 483 F.3d 160, 168–69 (2d Cir.2007) (citing *Miles v. Apex Marine Corp., et al.*, 498 U.S. 19, 32, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990)). *Accord Calcano–Martinez v. I.N.S.*, 232 F.3d 328, 338–39 (2d Cir.2000) (assuming that Congress, in amending federal immigration law, was aware of and had considered existing judicial precedent, and stating that had Congress wished to repeal that precedent, "it knew to use more explicit language than it chose") (citation omitted); *Mastercard*, 2004 WL 326708, at *10 ("When Congress employs terms that have been interpreted by the federal courts, it is presumed to know of the terms' characterization.") (citing *Director, Office of Workers' Compensation Programs v. Perini N. River Assocs.*, 459 U.S. 297, 319–20, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983)). The legislative history of the 1999 also Amendment suggests that it was an "attempt to clarify" aspects of the Federal Trademark Dilution Act of 1996. Defendant's Reply Memorandum of Law ("Def. Reply Mem.") at 2 (citing Report of the House of Representatives on the Trademark Amendments Act of 1999 at 6). *See also* 5 *McCarthy on Trademarks* § 30:62 (opining that the 1999 Amendment was passed "to correct a drafting error" in the dilution provision).

Louis Vuitton surmises that Congress's "deliberate insertion of the phrase 'willful violation'" with respect to dilution claims, and "omission" of similar language with respect to infringement claims "reflects Congress'[s] intent to *establish a higher burden of proof for a dilution claim and to eliminate any such burden of proof in an infringement claim.*"[25] For the reasons stated above, this argument is not persuasive. Moreover, at the time of the 1999 Amendment, the language of section 1125(c)(2) explicitly required the owner of a famous mark to prove a defendant's willfulness in order to recover monetary relief on a dilution claim. It is thus fair to presume that when Congress amended section 1117(a) to include a cross-reference to subsection 1125(c), it left both burdens of proof unchanged.

Finally, my holding also comports with the underlying rationale of awarding profits for trademark infringement. After conducting a "close[ ] investigation into the law's historical development,"[26] the *Blue Coral* court observed that where a party seeks monetary relief for trademark infringement predicated on a theory of unjust enrichment—which Louis Vuitton advances here[27]—in order "for the defen-

dant's enrichment to be 'unjust' . . . it must be the fruit of willful deception."[28]

In 2004, after holding a seven day preliminary injunction hearing, this Court found there was "absolutely no proof [in the record] that Dooney & Bourke attempted to deceive customers."[29] Unless Louis Vuitton has developed new proof of Dooney & Bourke's willful deceit, the only monetary remedy to which Louis Vuitton will be entitled, with respect to its infringement claim, are damages—not Dooney & Bourke's profits.

## B. Louis Vuitton Must Show Actual Damages to Recover Monetary Relief on Its Federal Dilution Claim

■ Louis Vuitton argues that in light of the TDRA's changes to the existing evidentiary threshold for recovering dilution remedies, it is entitled to recover compensatory damages on its federal dilution claim by showing that Dooney & Bourke is using a mark that is *"likely to cause* confusion among prospective purchasers or that is *likely to cause dilution."*[30] In other words, Louis Vuitton claims that it need not show actual dilution in order to recover damages, as previously required under section 1125(c).[31] But the plain language

---

**25.** Pl. Mem. at 5 (emphasis added).

**26.** 968 F.2d at 1532.

**27.** *See* 2/12/07 Conference Transcript at 50–52.

**28.** *Blue Coral*, 968 F.2d at 1538 (citing *El Greco Leather Prods. Co. v. Shoe World Inc.*, 726 F.Supp. 25, 29–30 (E.D.N.Y.1989)). In *Blue Coral*, the Second Circuit also noted that the history of profit awards "strongly supports" the "conclusion that, *under any theory*, a finding of defendant's willful deceptiveness is a prerequisite for awarding profits." *Id.* at 1537 (emphasis added).

**29.** *Louis Vuitton*, 340 F.Supp.2d at 446–47.

**30.** Louis Vuitton's Memorandum of Law in Support of Motion for Reconsideration at 1–2 (emphasis added). *Accord* Pl. Mem. at 9.

**31.** *See* Pl. Mem. at 9. Louis Vuitton relies on the Second Circuit's recent decision in *Starbucks Corp. v. Wolfe's Borough Coffee*, 477 F.3d 765 (2d Cir.2007), for the proposition that the "likely to cause dilution" standard can be applied to pre-TDRA conduct. *See* Pl. Mem. at 9. But *Starbucks* is inapposite because that case addressed the effect of the TDRA on a plaintiff's right to *injunctive* relief. *See* 477 F.3d at 766 (expressly stating that the recently enacted "likely to cause dilution" standard applied to defendant's pre-October 6, 2006 conduct only "to the extent that [plaintiff] has sought injunctive relief on the

of subsection 1125(c), as amended, expressly forecloses this result. The second sentence of subsection 1125(c)(5), entitling owners of famous marks to dilution damages, contains an unambiguous date restriction that authorizes the application of the "likelihood of dilution" standard as a basis for recovering damages to civil actions where the diluting mark or trade name was first introduced in commerce *after October 6, 2006.*[32]

Louis Vuitton attempts to evade this express proscription by arguing that "the TDRA is ambiguous as to its temporal reach."[33] This is nonsense. The language of subsection 1125(c)(5) providing for monetary remedies unambiguously and explicitly prescribes its temporal scope *to the day.*[34] Congress did not intend that the relaxed evidentiary standard would apply retroactively, and it is difficult to imagine how Congress could have been any clearer on this point.

Louis Vuitton's federal dilution claim is not, as Louis Vuitton suggests, "extinguished" if the Court declines to retroactively apply the 'likelihood of dilution' standard to its prayer for monetary relief.[35] Rather, the controlling standard is that which governed prior to the TDRA. Accordingly, Louis Vuitton's federal dilution claim survives, although under the applicable standard, it will be not reap monetary remedies absent a showing of actual dilution.

## IV.  CONCLUSION

For the reasons stated above, in order to recover Dooney and Bourke's profits on its federal infringement claim, Louis Vuitton must prove that Dooney and Bourke's conduct was willfully deceitful. Additionally, with respect to Louis Vuitton's federal dilution claim, because the TDRA's lower evidentiary standard is not retroactive, Louis Vuitton must show actual dilution in order to be entitled to monetary relief. A conference in this matter is scheduled for May 2, 2007, at 4:00 p.m.

SO ORDERED.

---

issue of dilution" (citing *Havana Club Holding, S.A. v. Galleon S.A.,* 203 F.3d 116, 129 (2d Cir.2000)), for the proposition that when seeking *prospective relief* there is no issue of retroactivity because the conduct to be enjoined is, by definition, prospective). Congress's intention that the October 6, 2006 cutoff date apply to monetary relief for dilution, but not to injunctive relief, is also readily apparent from the sentence structure of the TDRA. The first sentence of subsection 1125(c)(5), which provides for injunctive relief, lacks any reference to the explicit date restriction contained in the second sentence, which addresses monetary relief.

**32.**  *See* Def. Reply Mem. at 5 (citing 15 U.S.C. § 1125(c)(5)).

**33.**  Pl. Mem. at 17–18.

**34.**  *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("[W]hen a case implicates a federal statute enacted after the events giving rise to the suit, a court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, there is no need to resort to judicial default rules."); *Martin v. Hadix,* 527 U.S. 343, 352, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (where a clear "congressional directive on the temporal reach of a statute" exists, a court's proper role is to apply the directive without further inquiry); *Guaylupo–Moya v. Gonzales,* 423 F.3d 121 (2d Cir.2005) (where Congress has "spoken clearly" as to a statute's retroactive applicability, "the inquiry is over and the court must implement Congress's intent unless doing so would be unconstitutional" (quotations and citation omitted)).

**35.**  Pl. Mem. at 12.