United States Court of Appeals,

Fifth Circuit.

No. 92–8032.

CJC HOLDINGS, INC., d/b/a ArtCarved, Plaintiff–Appellee,

v.

WRIGHT & LATO, INC., Defendant–Appellant.

Dec. 15, 1992.

Appeal from the United States District Court for the Western District of Texas.

Before GOLDBERG, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

I.

Since 1955, CJC Holdings, Inc. (CJC), d/b/a ArtCarved, has produced its Lyric wedding ring, which consists of a white gold shell inlaid with a separate yellow gold band covered with a floral design. The ring has no copyright or patent protection. Wright & Lato (W & L) copied the ring using a direct mold technique and began selling the ring; W & L puts its own trademark on the inside band of the ring and does not advertise the ring as a "Lyric' ring.

ArtCarved sent W & L several letters telling it to cease producing the ring or risk suit. W & L responded but did not agree to stop producing the ring. W & L has sold only one copy of the ring that was received in Texas, and ArtCarved solicited that sale through a jewelry store.

II.

CJC sued W & L, claiming it had copied and marketed CJC's "Lyric' ring and asserting six claims: (1) trade dress infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) common law unfair competition; (3) injury to business reputation and dilution of distinctive quality under the Texas Anti–Dilution Statute, Tex.Bus. & Com.Code Ann. § 16.29; (4) conversion; (5) tortious interference with prospective contractual relations and prospective economic advantage; and (6) declaratory judgment under 28 U.S.C. §§ 2201–2202 and Tex.Civ.Prac. & Rem.Code Ann. ch. 37. CJC sought numerous forms of relief, including injunctions against further violations;

impoundment of infringing items during pendency of the action; destruction of infringing items; accounting of sales and profits; an award of all profits; actual damages, including lost profits; exemplary damages; treble damages under the Lanham Act; declaratory relief; reasonable attorney fees; and costs.

After W & L failed to file a timely response, the district court clerk entered default. A chronological list best describes the events leading to W & L's default:

1989: CJC discovered that W & L had copied and marketed the Lyric ring.

3/9/90: CJC sent a letter to W & L, asking it to stop.

3/26/90: W & L responded but did not agree to stop.

4/9/90: CJC sent another letter, asking W & L to stop.

4/16/90: W & L responded, saying it would not stop.

6/20/90: CJC filed its complaint.

6/22/90: CJC effected substituted service through the Texas Secretary of State. This made W & L's answer due on 7/16/90.

6/26/90: W & L signed a certified mail receipt acknowledging that it had received the summons and complaint from the Secretary of State. Also on this day, W & L's attorney received a courtesy copy of the complaint—but not the summons—from CJC's attorney. CJC's attorney explained that the suit had been filed but did not say that service had been made. W & L's attorney phoned W & L's president, Greg Clapper, and told him to watch for the complaint and summons.

6/29/90: W & L closed its doors for its annual corporate vacation. No one worked at W & L's office during this vacation.

7/16/90: W & L opened its doors. Its answer was due on this day.

7/17/90: Clapper went to Washington, D.C., on business.

7/19/90: Clapper went to Kansas City on business.

7/21/90: Clapper went to a trade show in New York. While there, he approached CJC's president and inquired about the suit. Clapper said W & L had not been served, but CJC's president said that W & L had been served.

7/26/90: Clapper returned from the trade show and discovered the complaint and summons.

7/30/90: W & L's attorney asked CJC for an extension on the deadline so it could defend the suit.

7/31/90: CJC denied the request and filed a motion for entry of default.

8/1/90: The court clerk entered default.

8/6/90: W & L filed a motion to set aside the default.

8/15/90: W & L filed a motion to dismiss based upon no trade dress protection, no personal jurisdiction, improper venue, and insufficient service of process under Fed.R.Civ.P. 12(b).

4/15/91: CJC filed a motion for default judgment.

5/30/91: Court denied W & L's motion to set aside default and took CJC's motion for entry of default judgment under advisement.

6/20/91: W & L filed a motion for reconsideration of court's ruling refusing to set aside default, or in the alternative, relief from such ruling under Fed.R.Civ.P. 60(b)(1).

11/20/91: Court entered order denying W & L's motion for reconsideration and granting CJC's motion for default judgment.

12/9/91: Court entered final judgment.

The final judgment granted CJC an injunction requiring W & L to label its rings so as to avoid public confusion, but the court found no evidence to support an award of damages. The court did award CJC $115,000 in attorneys' fees, plus interest and costs.

III.

W & L argues that the district court should have set aside the default judgment. We review a district court's refusal to set aside an entry of default under Fed.R.Civ.P. 55(c) or to set aside a default judgment under Fed.R.Civ.P. 60(b) under an abuse of discretion standard. *Federal Sav. & Loan Ins. Corp. v. Kroenke,* 858 F.2d 1067, 1069 (5th Cir.1988).[1]

Under either rule, we examine the same factors: whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented. *United States v. One Parcel of Real Property,* 763 F.2d 181, 183 (5th Cir.1985) (citing *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981)). These factors are not "talismanic," and we will consider others.

---

[1]Because of the seriousness of a default judgment, and although the standard of review is abuse of discretion, "even a slight abuse [of discretion] may justify reversal." *Williams v. New Orleans Pub. Serv.,* 728 F.2d 730, 734 (5th Cir.1984) (quoting *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 402 (5th Cir. Unit A Jan. 1981)). W & L argues that the standard for relief from entry of default is more lenient that the standard for relief from a default judgment, but W & L does not suggest how our standard of review would be different under the two rules. We leave this issue for another day. *See Kroenke,* 858 F.2d at 1069.

*Dierschke v. O'Cheskey (In re Dierschke),* 975 F.2d 181, 184 (5th Cir.1992). The ultimate inquiry remains whether the defendant shows "good cause" to set aside the default. *Id.* The district court need not consider all of these factors. *Id.*

Here, the district court based its decision upon W & L's willful failure to answer the complaint. Because willfulness is a finding of fact, we review that finding under a clearly erroneous standard. *Id.*

Our prior cases use the term "willful' when considering the culpability of the defendant's actions. *See, e.g., One Parcel of Real Property,* 763 F.2d at 183. Other cases, echoing the "excusable neglect" language of rule 60(b), speak of neglect or culpable conduct on the part of the defaulting party. *E.g., Kroenke,* 858 F.2d at 1069–70 ("justifiable neglect" and "culpability of the defendant's conduct"); *United States v. One 1978 Piper Navajo PA–31 Aircraft,* 748 F.2d 316, 318 (5th Cir.1984) ("justifiable neglect" and "excusable neglect"). We conclude that the latter view is more consistent with rule 60(b) and our recent opinion in *Dierschke.* Here, the district court held that W & L's default was willful, a finding which, if upheld, would certainly not constitute excusable neglect. We therefore review the district court's determination of willfulness, but we suggest that district courts should use the less subjective excusable neglect standard in the future.

W & L relies upon several important facts in arguing that its default was not willful. W & L's president, Clapper, and W & L's outside counsel claim they were not aware they had been served until after the answer was due. Clapper claims he received the registered letter and sent it to the accounting department, thinking it pertained to a collection proceeding. Several days later, the entire company went on vacation for two weeks, pursuant to industry custom.

Following the vacation, Clapper attended several trade shows, at one of which Clapper sought out ArtCarved's President, Sullivan, to inquire about the suit. Clapper stated that W & L had not been served, while Sullivan claimed service had been made. After Clapper returned, he immediately called counsel, who requested an extension of time; this occurred fourteen days after the answer was due. W & L blames CJC for the confusion, because CJC sent W & L's counsel a copy of the complaint but not the summons.

We cannot say that the district court's finding was clearly erroneous. CJC's counsel sent W & L's counsel a copy of the complaint as a courtesy; this put W & L on notice it would soon be served with process. W & L seems to suggest that, by sending only the complaint, CJC tricked it into believing it would not be served. We find no merit in this argument. The federal rules did not require CJC to send W & L the complaint; CJC did so out of courtesy.

W & L's position implies it was less likely to be alert for service of process than if CJC had sent nothing. We think W & L should have expected service of process. W & L received the certified letter three days before its company-wide vacation. We do not find it unreasonable to expect companies to read certified letters in three days. If the rule were otherwise, service by certified mail would rarely be effective. Based upon these facts, the district court's finding on willfulness was not clearly erroneous, and we cannot say the district court abused its discretion in refusing to set aside the default judgment.

IV.

We next must address W & L's claim that the district court improperly awarded attorneys' fees to CJC. The Lanham Act allows a court to award attorneys' fees in exceptional cases. 15 U.S.C. § 1117(a) (West Supp.1992). We recently declined the opportunity to define the term "exceptional,' *Taco Cabana Int'l v. Two Pesos Inc.,* 932 F.2d 1113, 1127 (5th Cir.1991), *aff'd,* ––– U.S. ––––, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992), so we define that term here. A district court should decide whether a case is exceptional by examining all the facts and circumstances. *See Machinery Corp. of Am. v. Gullfiber AB,* 774 F.2d 467, 472–73 (Fed.Cir.1985) (in determining whether patent case is exceptional, court should consider all the facts and circumstances).

Congress established a statutory basis for awarding attorneys' fees in trade dress cases in 15 U.S.C.A. § 1117(a) (West Supp.1992), which provides in part, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." Congress used the same language in 35 U.S.C.A. § 285 (West 1984), which governs attorneys' fees in patent infringement actions. Given the parallel language, we infer that Congress meant courts to apply similar standards in both patent

and trade dress cases.[2]

These standards necessarily will differ from the more liberal approach taken in copyright actions, in which the court need not find the case "exceptional' to award fees. 17 U.S.C. § 505 (1988). In fact, attorneys' fees in copyright actions are "the rule rather than the exception." *Micromanipulator Co. v. Bough,* 779 F.2d 255, 259 (5th Cir.1985).

Under our judicial system, the prevailing party normally may not recover attorneys' fees absent statutory authority. *Gullfiber,* 774 F.2d at 471 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975)). Thus, a party is not penalized for defending or prosecuting a lawsuit when that party has a good faith belief in its position. *Gullfiber,* 774 F.2d at 471 (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475 (1967)).

Given the general rule against awarding fees, and Congress's directive that a case must be "exceptional' to award fees in trade dress cases, we agree with the Federal Circuit that the prevailing party must demonstrate the exceptional nature of a case by clear and convincing evidence before a district court should decide whether to make the award. *Gullfiber,* 774 F.2d at 471 (citing *Reactive Metals & Alloys Corp. v. ESM, Inc.,* 769 F.2d 1578, 1582 (Fed.Cir.1985)). After the prevailing party has made such a showing, a district court, in its discretion, may award attorneys' fees, and we will review that determination for abuse of discretion. *Texas Pig Stands v. Hard Rock Cafe Int'l,* 951 F.2d 684 (5th Cir.1992). We review the district court's factual findings that make the case "exceptional' under the clearly erroneous standard. *Id.*

CJC argues for a rule that deliberate copying by the defendant of the plaintiff's trade dress makes a case *per se* exceptional. CJC further asserts we adopted such a rule in *Taco Cabana.* We reject both contentions. In *Taco Cabana,* we merely held that the district court did not abuse its discretion in awarding fees, because Two Pesos deliberately copied Taco Cabana's trade dress with

---

[2]Although the district court should consider factors similar to those considered in patent cases, it may well weigh certain factors more or less heavily in the trade dress area. The court should keep in mind that a patent provides a written description of the scope of coverage, while in the trade dress area, we deal with a less certain scope of protection.

the intention of reducing its sales. 932 F.2d at 1127–28. In other words, Two Pesos deliberately copied with the intention of preying on Taco Cabana's unique trade dress and drawing business away from Taco Cabana by making customers believe the restaurants were related. We did not adopt a *per se* rule that copying trade dress makes a case exceptional, nor do we conclude that such a rule would be appropriate.

CJC's ring was not protected by patent or copyright. Under those circumstances, a corporation normally has a right to make "knock-off" copies.[3] W & L did not use the trademark "Lyric" either in advertising or on the ring itself. It may have copied the ring in order to compete with CJC, not because it believed it could fool customers into thinking CJC made the rings. *See Moore Business Forms v. Ryu,* 960 F.2d 486, 492 (5th Cir.1992) (no attorneys' fees where defendant did not try to gain benefit or advantage by using plaintiff's trademark). Moreover, CJC did not prove any damages. *Id.* (lack of damages is an important fact to consider in determining whether a case is exceptional). Considering these and other circumstances, the district court legitimately could find the case unexceptional, despite deliberate copying.

We decline to adopt a *per se* rule for another reason. A district court normally should not find a case exceptional where the party presents what it in good faith believes may be a legitimate defense. *Gustafson, Inc. v. Intersystems Indus. Prods.,* 897 F.2d 508, 511 (Fed.Cir.1990). Here, W & L stresses that it felt it had a right to copy the ring and that CJC's claimed trade dress may not be entitled to protection because it is functional.[4] The district court commented that it doubted whether CJC could establish a trade dress claim at trial. W & L may well have had a good faith argument that it was perfectly in its rights to copy CJC's ring. Indeed, had W & L not defaulted, it might have established a functionality defense at trial.

---

[3]The parties use the term "knock-off" to refer to copies nearly identical to the original. Here, W & L used a direct mold of CJC's ring.

[4]If CJC's trade dress indeed were functional, CJC would not be entitled to a default judgement, as the pleadings would not establish a cause of action as a matter of law. *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975). We need not decide whether CJC's trade dress is functional, as W & L does not ask us to set aside the default judgment on the ground that CJC was not entitled to judgment as a matter of law.

We need not decide the ultimate issue of whether the district court properly awarded fees in this case, because the district court did not make findings of fact as to why this case is exceptional. We agree with W & L that the district court must state its basis for finding the case exceptional to allow us to determine whether the court abused its discretion. Here, the absence of such findings "frustrates appellate review." *Bandag, Inc. v. Al Bolser's Tire Stores,* 750 F.2d 903, 921 (Fed.Cir.1984). So, we vacate the award of attorneys' fees and remand for a determination of whether this case is exceptional.

If the district court were to find this case exceptional and exercise its discretion to award attorneys' fees, the court should reexamine the amount of the fees. W & L contends that the court awarded fees that CJC admitted it is not entitled to receive. Because the district court might not award fees on remand, we need not concern ourselves with this issue.

V.

In summary, we AFFIRM the district courts denial of W & L's motion to set aside the default judgment. We VACATE the award of attorney fees and REMAND for further proceedings in accordance with this opinion.