PHILIP MORRIS USA INC., Plaintiff,

v.

William W. LEE, et al., Defendants.

No. EP–05–CA–0490–PRM.

United States District Court,
W.D. Texas,
El Paso Division.

April 8, 2008.

Bruce A. Koehler, Carl H. Green, Mounce, Green, Myers, Safi, Paxson & Galatzan, P.C., El Paso, TX, John C. Ulin, Los Angeles, CA, Samuel R. Watkins, Heller Ehrman LLP, Seattle, WA, for Plaintiff.

Robert A. Skipworth, Attorney at Law, Corey W. Haugland, James & Haugland, P.C., Christopher Allen Antcliff, Law Office of Chris Antcliff, El Paso, TX, Gerson M. Joseph, Plantation, FL, for Defendants.

Felipe Castaneda, El Paso, TX, pro se.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS WILLIAM W. LEE AND FELIPE CASTANEDA

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered (1) Plaintiff Philip Morris USA Inc.'s ("Philip Morris") "Motion for Summary Judgment Against Defendants William W. Lee and

Felipe Castaneda," filed on September 17, 2007; (2) Defendant William W. Lee's ("Lee") "Response to Plaintiff's Motion for Summary Judgment," filed on October 16, 2007; (3) Philip Morris's "Reply Memorandum in Support of Its Motion for Summary Judgment Against Defendants William Lee and Felipe Castaneda," filed on November 2, 2007; (4) Defendant Felipe Castaneda's ("Castaneda") pro se "Response of Felipe Castaneda to Plaintiff's Motion for Summary Judgment," filed on November 5, 2007;[1] (5) Philip Morris's "Objections to Affidavit of Defendant William W. Lee and Motion to Strike," filed on November 1, 2007; (6) Lee's "Response of William W. Lee to Plaintiff, Phillip [sic] Morris USA, [sic] Inc.'s Objections to Affidavit and Motion to Strike," filed on November 6, 2007; (7) Philip Morris's "Reply in Support of its Motion for Summary Judgment Against Defendant Felipe Castaneda," filed on November 20, 2007; and (8) Philip Morris's "Reply to William W. Lee's Response to Objection [sic] to Affidavit and Motion to Strike," filed on November 20, 2007, in the above-captioned cause. After due consideration, the Court is of the opinion that Philip Morris's Motion for Summary Judgment should be granted in part and denied in part for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Philip Morris is a Virginia corporation with its principal place of business in Virginia. Pl.'s Second Am. Compl. ¶ 14. As

evidenced by certificates of registration issued by the United States Patent and Trademark Office (the "PTO"), Philip Morris is the registered owner of the Marlboro word mark and the Marlboro Roof Design label mark (collectively, the "Marlboro Marks"), which it uses in connection with its tobacco products. Pl.'s Mot. Summ. J. App. Exs. 1, 2 (Certificates of Registration). The present suit arises from a seizure of counterfeit Marlboro cigarettes made by the United States Bureau of Customs and Border Protection ("Customs"). Id. App. Ex. 4 (Notice of Seizure). Neither party disputes the facts as stated below.

In 2003, Lee and Castaneda, both residents of El Paso, Texas, became acquainted. Id. App. Ex. B, 32, 41 (Lee's Deposition). They agreed to form a business importing and selling cigarettes in the United States. Id. App. Ex. B, 32, 41. They named the business Kagro Inc. ("Kagro"). Id. App. Ex. 6 (Kagro Partnership Agreement).[2] Though Lee lacked prior experience in the cigarette industry, he became president of Kagro. Lee's Resp. to Pl.'s Mot. Summ. J. Lee Aff. ¶ 7; Pl. Mot. Summ. J. App. Ex. 6. Castaneda, on the other hand, had some familiarity with the industry. In 2004, he pled guilty in the United States District Court for the Western District of Texas to conspiring to smuggle counterfeit cigarettes into the United States and to trafficking in counterfeit goods in 2001 and 2002, in violation of 18 U.S.C. §§ 371, 545, 2342 and 2320. Pl.'s Mot. Summ. J. App. Ex. E, 158–59 (Castaneda's deposition).[3]

---

1. Though Castaneda's Response is untimely, the Court will consider it as though it had been timely filed.

2. The Partnership Agreement names Lee, Castaneda and John K. Jon ("Jon") as partners of Kagro. According to Lee's deposition testimony, Jon decided not to become a partner,

and never signed the Agreement. Pl.'s Mot. Summ. J. App. Ex. B, 134.

3. As discussed infra in footnote 14, Castaneda's conviction, which occurred after the actions presently before the Court, has no bearing on his liability. Nonetheless, the conduct which formed the basis of that conviction took place prior to the underlying actions

In discussing their partnership, Castaneda told Lee he had found a buyer looking to purchase cigarettes. *Id.* App. Ex. B, 32. Castaneda identified the buyer as Raul Martinez, III ("Martinez"), who lived in El Paso, Texas. *Id.* App. Ex. B, 43. Castaneda asked Lee to locate a cigarette distributor from whom Kagro could buy cigarettes and then re-sell them to Martinez. *Id.* App. Ex. B, 32–33, 38. Lee found a sales advertisement on the Internet for Marlboro cigarettes posted by Synergy Trading Group, Inc. ("Synergy"), a Florida-based company. *Id.* App. Ex. B, 42. Lee contacted Synergy and spoke with two of its representatives, Julian Balea ("Balea") and Ronald Morrison ("Morrison"). *Id.* App. Ex. B, 43–45.

According to the sales invoice, Kagro agreed to purchase 1,960 master cases of cigarettes from Synergy at $260.00 each. *Id.* App. Ex. 8 (Sales Invoice). The cigarettes were to be delivered in two equal installments.[4] *Id.* App. Exs. 8; B, 170–71. Kagro was to pay Synergy $254,800.00 to cover the cost of the first installment. *Id.* App. Ex. B, 110. Kagro arranged to sell the cigarettes to Martinez at $345.00 per master case. *Id.* App. Ex. 7 (Kagro Purchase Order). Kagro planned to repeat this scheme each month over the course of a year. Lee and Castaneda stood to profit approximately $1 million from the entire transaction. *Id.* App. Ex. B, 171, 173–74.

Synergy stored the cigarettes in a warehouse in Curaçao, Netherlands Antilles. *Id.* App. Ex. 8. It hired John Tominelli ("Tominelli") and his company, Southeastern Cargo Services, Inc., to inspect the cigarettes. *Id.* App. Ex. C, 101–02 (Balea's deposition). After completing the inspection, Tominelli issued a report, which listed the quantity, packaging, and freshness of the cigarettes. *Id.* App. Ex. 9 (Inspection Report). The report falsely described the cigarettes as "Made Under Authority of Philip Morris Products S.A., Neuchatel, Switzerland." *Id.* App. Ex. 9. According to Balea and Morrison, before the goods were shipped to El Paso, Texas, Tominelli told Castaneda that it was illegal to import the cigarettes into the United States. *Id.* App. Exs. C, 153–54; F, 41–47 (Morrison's deposition). Castaneda responded that he "wasn't really concerned about that [illegality]." *Id.* App. Ex. C, 153–54. He also told Morrison that he had "everything arranged," and advised him not to "worry" because his "contacts in Houston [were] strong ...," which Morrison understood to indicate that Castaneda knew that importing the cigarettes was illegal, but had arranged with Customs agents to ensure that they would nonetheless be imported. *Id.* App. Ex. F, 47.

Customs notified Philip Morris that it seized a shipment of counterfeit Marlboro cigarettes at the Port of Houston, Texas on October 8, 2003. *Id.* App. Ex. 4. The cigarettes bore marks indicating that they had been shipped from Curaçao and were destined for El Paso, Texas. *Id.* App. Ex. 4.

## B. Procedural Background

As a result of the seizure by Customs, Philip Morris initiated this action against numerous defendants, including Lee and Castaneda.[5] Philip Morris raised the fol-

---

and, thus, attests to Castaneda's familiarity with cigarette distribution.

4. A master case of cigarettes contains fifty cartons. Pl. Mot. Summ. J. ¶ 21 n. 3. In each carton, there are ten packages of cigarettes. *Id.*

5. Philip Morris's Second Amended Complaint identified the following parties as defendants: Synergy, Balea, Morrison, Lee, Castaneda, Martinez, Tominelli, Southwestern Cargo Services, Inc., and Motohiro Miyagi. Pl.'s Second Am. Compl. ¶ 1. Some of these defendants have since been dismissed by the Court.

lowing six claims: (1) trademark infringement in violation of 15 U.S.C. § 1114(1); (2) false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A); (3) unlawful importation of goods bearing infringing marks in violation of 15 U.S.C. § 1124; (4) unlawful importation of goods bearing registered trademarks in violation of 19 U.S.C. § 1526(a); (5) trademark infringement in violation of Texas Business and Commerce Code § 16.26; and (6) unfair competition in violation of Texas common law. Pl.'s Second Am. Compl. ¶¶ 56–82.

Philip Morris moves for summary judgment against Lee and Castaneda on all six grounds. Pl.'s Mot. Summ. J. ¶ 1. In his response, Lee "concedes liability and agrees to a permanent injunction." Lee's Resp. to Pl.'s Mot. Summ. J. ¶ 2. He opposes the imposition of statutory damages and the award of attorneys' fees. *Id.* at ¶¶ 3, 13. In his response, Castaneda admits importing cigarettes into the United States, but submits that he believed the cigarettes were genuine. Castaneda's Resp. to Pl.'s Mot. Summ. J. ¶¶ 6, 8. Castaneda also alleges that he thought that he could lawfully import the cigarettes because he intended to re-sell them in duty free stores. *Id.*

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue exists only if there are "factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To defeat summary judgment, the non-moving party must set forth specific facts showing the existence of a genuine issue concerning an essential component of the case. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998). Conclusionary allegations and unsubstantiated allegations are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir.2007); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996). In evaluating a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in its favor. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir.2001).

### B. Philip Morris's Objections to Lee's Summary Judgment Evidence

In support of his Response, Lee submits his affidavit. Lee's Resp. to Pl.'s Mot. Summ. J. Lee Aff. Philip Morris objects to portions of this affidavit as inadmissible on various grounds. Pl.'s Obj. 1–4.

In responding to a motion for summary judgment, the non-movant must "set forth facts that would be admissible in evidence at trial." *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir.1990) (discussing Federal Rule of Civil Procedure 56(e)); *see also Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991) (striking a letter submitted as summary judgment evidence because it would be inadmissible if offered at trial). "Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial. . . ." *Id.* An affidavit may be submitted as summary judgment evidence if it is based on the affiant's personal knowledge, sets forth admissible facts, and shows that

the affiant is competent to testify to the matter stated therein. FED. R. CIV. P. 56(e).

The Court will note Philip Morris's objections and make admissibility determinations as it considers the summary judgment motion. Objections to portions of Lee's affidavit that the Court does not consider will be overruled as moot.

## III. LEGAL ANALYSIS

### A. Defendants are Liable for Violating the Lanham Act

■ Philip Morris argues that it is entitled to summary judgment against Lee and Castaneda for violating the Lanham Act, 18 U.S.C. § 1114(1), which prohibits trademark infringement, and § 1125(a), which prohibits false designation of origin.[6] *See* 15 U.S.C. §§ 1114(1), 1125(a). The analysis of both claims is often identical, and the same evidence will establish liability. *Brookfield Commc'n Inc. v. W. Coast. Entm't Corp.*, 174 F.3d 1036, 1046–47 n. 8 (9th Cir.1999); *Philip Morris USA Inc. v. Liu*, 489 F.Supp.2d 1119, 1121–22 (C.D.Cal.2007).

■ Philip Morris will prevail on its Lanham Act claims if it establishes that (1) Philip Morris possess valid trademarks entitled to protection under the Lanham Act, and (2) Lee and Castaneda used similar marks in commerce in a manner likely to confuse or deceive consumers who have come to recognize the Marlboro Marks. *See Microsoft Corp. v. Wholesale Club, Inc.*, 129 F.Supp.2d 995, 1007 (S.D.Tex. 2000); *accord* 15 U.S.C. §§ 1114(1), 1125(a). Lee does not contest that Philip Morris has established these elements, and concedes liability. Lee's Resp. to Pl.'s Mot. Summ. J. ¶ 2. Castaneda, however, does not concede liability under the Lanham Act. Accordingly, the Court will analyze whether Philip Morris is entitled to summary judgment against Castaneda.

### 1. Philip Morris Owns Valid and Protectable Trademark Rights in the Marlboro Marks

■ The "threshold requirement that the plaintiff possesses a protectable mark" is satisfied by registering the trademark with the PTO. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir.1998). A mark registered with the PTO is presumptively valid. *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 443 n. 2 (5th Cir.2000) (citing 15 U.S.C. § 1057(b)). Once a registered mark is used continuously for five years from the date of registration, it becomes "incontestable." *Pebble Beach Co. v. Tour 18 I*, 155 F.3d 526, 533 n. 4 (5th Cir.1998) (citing 15 U.S.C. § 1065). An incontestable mark entitles the registrant to exclusive use of the mark in commerce, subject to the defenses enumerated in 15 U.S.C. § 1115(b).[7] *Id.*

---

**6.** Philip Morris also asserts claims against Lee and Castaneda based on Texas Business and Commerce Code § 16.26, which prohibits trademark infringement, and common law unfair competition.

The elements of trademark infringement under Texas law are identical to those under the Lanham Act. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir.1998) (citing *Zapata Corp. v. Zapata Trading Int'l Inc.*, 841 S.W.2d 45, 47 (Tex.App.1992)). Additionally, "the same facts which would support an action for trademark infringement would also support an action for [common law] un-

fair competition." *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir.1985).

Accordingly, the Court's analysis of Philip Morris's Lanham Act claims applies similarly to its state statutory and common law claims. The Court will refer to all three claims as the "Lanham Act."

**7.** 15 U.S.C. § 1115(b) sets forth the following defenses, none of which are applicable here: (1) the registration of the mark was obtained fraudulently; (2) the mark has been abandoned by the registrant;

■ In this case, Philip Morris has registered with the PTO as the owner of the Marlboro word mark[8] and the Marlboro Roof Design[9] label mark. Pl.'s Mot. Summ. J. Exs. 1, 2. It is undisputed that Philip Morris has used these marks in connection with its tobacco products continuously for several decades. Accordingly, Philip Morris owns valid and protectable trademark rights in the Marlboro Marks, and possesses incontestable rights to their exclusive use.

### 2. Castaneda Used the Marlboro Marks in Commerce in a Manner Likely to Cause Confusion

#### a. Castaneda Admits Using the Marlboro Marks in Commerce

■ To establish liability under the Lanham Act, a plaintiff must show that the alleged infringer used a trademark in commerce. 15 U.S.C. §§ 1114(1), 1125(a). "The term use in commerce means the bona fide use of a mark in the ordinary course of trade [such as] in connection with the sale, offering for sale, or advertising [of goods]." 15 U.S.C. § 1127. A mark is used in commerce "when (A) it is placed on the goods ... and (B) the goods are sold or transported in commerce." *Id.* at § 1127(1). Offering for sale and importing counterfeit goods into the United States constitutes "use in commerce." *Philip Morris USA, Inc. v. Lee,* 481 F.Supp.2d 742, 748 (W.D.Tex.2006) ("[L]ia-

bility [under the Lanham Act] attaches to individuals responsible for the importation of counterfeit goods, even when the goods are seized at a port of entry and are not distributed further."); *Liu,* 489 F.Supp.2d at 1122 n. 2 ("[W]here [Customs] seizes counterfeit products at the port of entry, before they are further transported or distributed, liability still attaches under ... the Lanham Act.")

■ In his deposition, Castaneda admits to (1) contracting to sell cigarettes bearing the Marlboro Mark, and (2) importing these goods into the United States. Pl.'s Mot. Summ. J. App. Ex. E, 27. In addition, the Inspection Report identifies El Paso, Texas, as the destination of the cigarettes shipped from Curaçao, and the Seizure Notice lists "Kagro, Inc.," in El Paso, Texas, as the recipient of the goods. *Id.* App. Exs. 4, 9. Accordingly, the Court holds that Castaneda used the Marlboro Marks in commerce when he (1) contracted to sell counterfeit cigarettes, and (2) imported them into the United States.

#### b. Counterfeit Marlboro Cigarettes Cause Confusion

■ "The touchstone of [liability under the Lanham Act] is whether the defendant's actions are 'likely to cause confusion.'" *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.,* 988 F.2d 587, 592 (5th Cir.1993) (quoting 15 U.S.C. § 1125(a)). In cases involving counterfeit

(3) the registered mark is used with the permission of the registrant;
(4) that the use of the name charged to be an infringement is a use, otherwise than as a mark, of the party's name in his own business;
(5) that the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use;
(6) that the mark whose use is charged as an infringement was registered and used prior to the registration under this Act;

(7) that the mark has been or is being used to violate the antitrust law of the United States;
(8) that the mark is functional; or
(9) that equitable principles, including laches, estoppel, and acquiescence, are applicable.

8. U.S. Patent No. 68,502 (filed Oct. 17, 1907).

9. U.S. Patent No. 938,510 (filed July 25, 1972).

goods, courts have consistently found a likelihood of confusion. *See, e.g., Microsoft Corp.*, 129 F.Supp.2d. at 1007 n. 11 (finding a likelihood of confusion existed where the defendants "sold counterfeit products on which plaintiff's registered marks appear in their entirety"); *Phillip Morris USA Inc. v. Shalabi*, 352 F.Supp.2d 1067, 1073 (C.D.Cal.2004) ("[C]ounterfeit marks are inherently confusing."); *Gucci Am. Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y.2003) ("[C]ounterfeits, by their very nature, cause confusion."). In these situations, a court "need only determine ... whether the items are, in fact, counterfeit...." *Gucci Am. Inc.*, 286 F.Supp.2d at 287. Counterfeit goods are products that are " 'identical with or substantially indistinguishable from' " trademarked goods. *Rolex Watch USA Inc. v. Meece*, 158 F.3d 816, 826 (5th Cir.1998) (quoting 15 U.S.C. § 1127).

 None of the parties dispute that the cigarettes at issue were substantially indistinguishable from authentic Marlboro cigarettes. While they were not manufactured by Philip Morris, they bore copies of the Marlboro Marks. *Id.* App. Ex. 4. They were also advertised as genuine Marlboro cigarettes. *Id.* App. Ex. B, 35, 44. Both the Inspection Report and the Sales Invoice described them as genuine Marlboro cigarettes. *Id.* App. Exs. 8, 9. Thus, the Court finds that the seized cigarettes are counterfeit Marlboro cigarettes which are inherently likely to confuse or deceive consumers who have come to recognize the Marlboro Marks. Accordingly, Philip Morris is entitled to summary judgment

against Castaneda for violating the Lanham Act.[10]

## B. Castaneda is Liable for Violating the Tariff Act

Philip Morris also alleges that Castaneda violated § 526(a) of the Tariff Act, 19 U.S.C. § 1526(a), by illegally importing merchandise bearing trademarks into the United States. To establish liability, Philip Morris must show that: (1) it has registered its Marlboro Marks with the PTO; (2) it has filed copies of the registration certificates with the Department of Treasury; and (3) Castaneda imported goods bearing the Marlboro Marks. *See* 19 U.S.C. § 1526(a).

 The Court has already found that Philip Morris registered the Marlboro Marks with the PTO and that Castaneda unlawfully imported counterfeit Marlboro cigarettes into the United States. *See, supra*, III.A(1) & (2)(a). A letter from the Department of Treasury establishes that Philip Morris properly filed copies of the marks' registration. Pl.'s Mot. Summ. J. App. Ex. 3 (Letter from the Department of Treasury). Thus, Philip Morris is entitled to summary judgment on the basis of § 526(a) of the Tariff Act.

## IV. REMEDIES

A "final judgment shall grant the relief to which each party is entitled...." FED. R. CIV. P. 54(c). Under the Lanham Act, the court may award an aggrieved party injunctive relief, statutory damages, costs of court, and, in exceptional cases, reason-

10. Castaneda is also liable for importing counterfeit goods in violation of the Lanham Act, 15 U.S.C. § 1124. To prevail, Philip Morris must show that Castaneda imported goods bearing copies of the Marlboro Marks without Philip Morris's consent. *See* 15 U.S.C. § 1124. Having already concluded that Castaneda arranged to import counterfeit cigarettes into the United States, the Court is of the opinion that he is likewise liable for violating 15 U.S.C. § 1124, and that Philip Morris is entitled to summary judgment on this claim.

able attorneys' fees. 15 U.S.C. §§ 1116, 1117(a).

## A. Permanent Injunction

■■ A court may issue an injunction to protect against future counterfeiting "according to principles of equity and upon such terms as the court may deem reasonable to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). To merit injunctive relief, a plaintiff must "show that the likelihood of confusion will actually cause him irreparable injury for which there is no adequate legal remedy." *Union Nat'l Bank v. Union Nat'l Bank,* 909 F.2d 839, 844 (5th Cir.1990).

■■ Lee expressly concedes liability and agrees to a permanent injunction. Lee's Resp. to Pl.'s Mot. Summ. J. ¶ 2. An injunction is also proper against Castaneda. Philip Morris has established a likelihood of confusion, which can constitute irreparable harm. *See, e.g., Hawkins Pro–Cuts v. DJT Hair,* No. CA 3–96–CV–1728–R, 1997 WL 446458, at *7 (N.D.Tex. July 25, 1997) ("The likelihood of confusion . . . can constitute irreparable harm in a trademark case."); *Chemlawn Servs. Corp. v. GNC Pumps, Inc.,* 690 F.Supp. 1560, 1569 (S.D.Tex.1988) ("likelihood of confusion . . . by its very nature causes irreparable harm."). Trademark infringement causes irreparable injury because the trademark owner suffers a loss of goodwill and damage to its reputation. *Acme Refrigeration Supplies v. Acme Refrigeration,* 961 F.Supp. 936, 938–39 (E.D.La. 1996) (holding that a trademark user suffers a loss of goodwill and damage to its reputation when it cannot control another's use of its marks). These injuries cannot be adequately compensated by legal dam-

ages. *Am. Rice, Inc. v. Producers Rice Mill, Inc.,* No. H–05–3227, 2006 WL 1984592, at *8 (S.D.Tex. July 14, 2006). Due to the risk of irreparable harm to the goodwill of the Marlboro Marks and the damage to Philip Morris's reputation, the Court finds that a permanent injunction barring Lee and Castaneda from future counterfeiting activities is reasonably necessary to prevent any further violation of Philip Morris's trademark rights.[11]

## B. Statutory Damages

■■ Philip Morris has invoked its right under the Lanham Act, 15 U.S.C. § 1117(c), to elect statutory damages in lieu of actual damages. Pl.'s Second Amend. Compl. 20. A court has the discretion to award statutory damages between $500.00 and $100,000.00 per infringed mark. *Rolex Watch USA, Inc.,* 158 F.3d at 824. Where the defendant is shown to have willfully infringed a trademark, the statutory maximum increases to $1 million per mark infringed. 15 U.S.C. § 1117(c)(2); *see, e.g., Phillip Morris USA Inc. v. Marlboro Express,* No. CV–03–1161, 2005 WL 2076921, at *6 ·(E.D.N.Y. Aug. 26, 2005) (awarding $4 million in damages based on the defendants' use of four trademarks); *Philip Morris USA Inc. v. Banh et al.,* No. CV 03–4043, 2005 WL 5758392, at *7 (C.D.Cal. Jan. 14, 2005) (awarding $4 million in damages where the defendants used four trademarks to sell counterfeit cigarettes); *Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 501–02 (C.D.Cal.2003) (awarding $2 million where the defendants infringed two trademarks).

---

**11.** Philip Morris requests a permanent injunction prohibiting Lee and Castaneda from "importing, purchasing, distributing, selling, offering for sale, or otherwise using in commerce any counterfeit cigarettes bearing the Marlboro Marks, or in assisting, aiding[,] or abetting any other person or entity in doing so." Pl.'s Mot. Summ. J. ¶ 56.

### 1. Legal Standard for Willful Conduct

 A defendant acts willfully " 'if he knows his actions constitute an infringement.' " *Taylor Made Golf Co. v. MJT Consulting Group*, 265 F.Supp.2d 732, 748 (N.D.Tex.2003) (quoting *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir.1988)). Furthermore, several Circuit Courts of Appeal, as well as courts within the Fifth Circuit, have found willful conduct where a defendant acted with " 'reckless disregard for, or [with] willful blindness' " toward a trademark owner's rights. *Berg v. Symons*, 393 F.Supp.2d 525, 539–40 (S.D.Tex.2005) (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2nd Cir. 2005)).[12] *See also Microsoft Corp.*, 129 F.Supp.2d at 1007 ("A finding of willfulness does not require actual knowledge, but rather willful blindness."); *A Touch of Class Jewelry Co. v. J.C. Penney Co.*, No. CIV. A. 98–2949, 2000 WL 1224804, at *5 (E.D.La.2000) (quoting *SecuraComm Consulting Inc. v. Securacom*, 166 F.3d 182, 187 (3rd Cir.1999)) ("Knowing or willful infringement ... involves an intent to infringe or a deliberate disregard of the mark holder's rights.").

 Willful blindness is a subjective inquiry which focuses on what the defendant suspected, and what he did with that suspicion. *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1151 n. 5 (7th Cir.1992). Indeed, the Fifth Circuit has held, in a non-trademark context, that a reasonable inference of willful blindness arises where the defendant is "subjectively aware of a high probability of the existence of the illegal conduct" and "purposely contrive[s] to avoid learning of the illegal conduct." *United States v.*

*Scott*, 159 F.3d 916, 922 (5th Cir.1998) (finding a jury instruction on willful blindness proper in a fraud prosecution). Therefore, evidence that a defendant blinded himself to the illegal nature of his conduct may establish "willful infringement" within the meaning of the Lanham Act. Accordingly, the Court shall examine whether either Lee, Castaneda, or both, willfully infringed the Marlboro Marks.

### 2. Philip Morris's Allegations of Willful Conduct

 Philip Morris submits the following as evidence that Lee and Castaneda acted willfully:

(1) Lee and Castaneda "purchased huge volumes of cigarettes at impossibly low prices." Pl.'s Mot. Summ. J. ¶ 52;

(2) At his deposition, Lee testified that Kagro stood to profit nearly $1 million by selling the counterfeit cigarettes to Martinez, and described this sum as "too much" money. According to Philip Morris, Lee "concedes that the enormous profits he stood to make on the deal "blinded him" to all other considerations...." *Id.*;

(3) Lee's request for a sample pack of the counterfeit cigarettes and subsequent comparison to a genuine pack of Marlboro cigarettes "*only* makes sense if [the comparison] were intended to establish that the counterfeit cigarettes looked sufficiently similar to the genuine cigarettes so as to deceive the consuming public." *Id.* at ¶ 53 (emphasis in original);

---

**12.** In addition to the Second Circuit, the Third, Seventh and Eleventh Circuits have also adopted the doctrine of willful blindness within the context of Lanham Act violations. *See, e.g., Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 231 (3d Cir.2003); *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148 (7th Cir.1992); *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1476 (11th Cir.1991).

(4) Lee fraudulently obtained the funds necessary to purchase the counterfeit cigarettes from Synergy. *Id.* at ¶ 24;[13]

(5) Castaneda's past criminal history in illegally trafficking cigarettes "demonstrates that he must have known that the transaction at issue in this case was too good to be true." *Id.* at ¶ 54;[14]

(6) Castaneda's repeated references to his "special connections" in Customs attest to "[his] knowledge that the cigarettes were counterfeit and subject to seizure." *Id.;*

(7) Lee and Castaneda "offer [ ] no explanation for why Martinez, who is an experienced cigarette dealer, would agree to pay such a premium for a deal [that] he could have found himself on the Internet had the cigarettes been genuine." Pl.'s Reply ¶ 7;[15] and

(8) Lee never pursued judicial action against any of the parties involved in the transaction until the instant lawsuit was brought. Pl.'s Reply ¶ 2 1. Even then, Lee filed cross-claims and dismissed them. *Id.* According to Philip Morris, Lee failed to pursue his cross-claims in an effort "to appear to be an innocent victim when such was not the case." *Id.*

### 3. A Genuine Issue of Material Fact Exists as to Whether Lee Acted Willfully

Lee relies on his deposition, affidavit, and other documents as evidence that he believed the goods were genuine Marlboro cigarettes. Lee attaches three letters to his Response. Lee's Resp. to Pl.'s Mot. Summ. J. Exs. 3–5. In the first letter, sent from Lee to Balea, Lee asks Balea to provide a manufacturer's certificate of authenticity for the goods. *Id.* Ex. 3. In the second letter, also sent by Lee to Balea, Lee asks Balea to return the money Kagro paid to Synergy because the goods were never delivered. *Id.* Ex. 4. In the third letter, sent by Lee to Tominelli, Lee demands damages related to the seizure by Customs. *Id.* Ex. 5. Lee's deposition testimony also evidences his belief as to the authenticity of the goods. He testified that Synergy advertised the goods as genuine Marlboro cigarettes and that Balea claimed to supply authentic Marlboro cigarettes. *Id.* App. Ex. B, 44, 50, 58. He also testified that the counterfeit packs of cigarettes looked "real" and "almost identical" to genuine packs of Marlboro cigarettes. *Id.* App. Ex. B. 62, 63, 149. Final-

---

**13.** Philip Morris alleges that Lee fraudulently obtained funds to purchase the goods from Synergy. Pl.'s Mot. Summ. J. ¶ 8. Based on this allegation, Philip Morris contends that "Lee's willingness to violate federal and state laws against wire fraud in order to purchase the counterfeit cigarettes only corroborates his willingness to violate federal and state laws against importing those cigarettes into the United States." *Id.* at ¶ 53. This evidence is inadmissible under Federal Rule of Evidence 404(b), which prohibits evidence of other crimes, wrongs or acts "in order to show action in conformity therewith." Fed. R. Ev. 404(b). Philip Morris uses Lee's allegedly fraudulent conduct only to show that insofar as he may have violated federal law in one context, he more likely than not violated federal law in the present action. On this basis, this evidence is inadmissible.

**14.** While the Court recognizes that a defendant's prior conviction for trafficking counterfeit cigarettes may establish willful conduct, *Philip Morris USA, Inc. v. Lin*, No. CV–03–8923 CAS, 2004 U.S. Dist. LEXIS 29903, at *19–20, Castaneda was not convicted until after the underlying transactions took place. Therefore, his prior conviction cannot be evidence of willful conduct.

**15.** Martinez's state of mind is not evidence that either Lee or Castaneda acted willfully.

ly, in his affidavit, Lee attests that he was never "told that the cigarettes could not come into the United States." Lee's Resp. to Pl.'s Mot. Summ. J. Lee Aff. ¶ 11.[16]

Lee also submits copies of business cards from two FBI agents as evidence that he contacted the FBI shortly after the seizure to "complain about Morrison, Balea and Tominielli." [17] Id. Ex. 6; Lee Aff. ¶ 15.[18] He contends that this shows he was "duped" into believing that the cigarettes were authentic. Id. at ¶ 12.

Lee also disputes Philip Morris's characterizations of willful conduct. As to the price of the cigarettes, Lee explains that he never questioned the price because he was not familiar enough with the cigarette industry to be aware of the market price of cigarettes.[19] Lee's Resp. to Pl.'s Mot. Summ. J. Lee Aff. ¶ 7.

Lee also challenges Philip Morris's assertion that Castaneda's criminal background is evidence that Lee acted willfully. In his affidavit, Lee asserts that he was unaware of Castaneda's "past misfortune" or that Castaneda "previously dealt with ... cigarettes." Id. at Lee Aff. ¶ 4.[20] This assertion is supported by Lee's deposition, in which he testified that he had been acquainted with Castaneda for only a short time. Pl.'s Mot. Summ. J. App. Ex. B, 38. While Castaneda may have "kn[own] a counterfeit transaction when he saw one," Pl.'s Reply ¶ 6, his state of mind cannot be evidence that Lee acted willfully.

As to Lee's deposition testimony that he was "blinded" by the opportunity to make nearly $1 million in profit, which Philip Morris construes as an admission of willful conduct, Pl.'s Mot. Summ. J. ¶ 52, Lee explains that he made the statement in hindsight. Lee's Resp. to Pl.'s Mot. Summ. J. Lee Aff. ¶ 7. He contends that "looking back, ... [he] was very negligent in not finding out more about the importation of cigarettes." Id. at Lee Aff. ¶ 7.[21]

As to his request for a sample pack of cigarettes, Lee that he sought to verify their authenticity in light of media reports of cigarette smuggling.[22] Pl.'s Mot.

16. Philip Morris objects to this statement as irrelevant. Pl.'s Obj. ¶ 6(H). The Court overrules this objection because the statement attests to Lee's knowledge, which is relevant to determining whether he acted willfully.

17. Philip Morris objects to these statements as conclusory and irrelevant. Pl.'s Obj. ¶ 6(K). The Court overrules these objections as the challenged statements draw no conclusions and are relevant to Lee's state of mind.

18. Philip Morris objects to these business cards as hearsay evidence. Pl.'s Obj. ¶ 6(K). The Court overrules this objection because the cards are not being introduced for the truth of the matter asserted.

19. Philip Morris objects to this portion of Lee's affidavit on the grounds that it is conclusory. Pl.'s Obj. ¶ 6(D). The Court overrules this objection because the statement is one of personal impression.

20. Philip Morris objects to this portion of Lee's affidavit on the grounds that it is conclusory and constitutes hearsay. Pl.'s Obj.

¶ 6(C). In the challenged portion, Lee draws no conclusions. Moreover, Lee's assertions that "[Castaneda] never told [him] he had contacts at the Houston Port of Entry or with UPS [and] never intimated to [him] that he had 'greased the skids,' " Lee's Resp. to Pl.'s Mot. Summ. J. Lee Aff. ¶ 4, are not hearsay because they do not refer to any out-of-court statements. Therefore, the Court overrules Philip Morris's objection.

21. Philip Morris objects to the portion of Lee's affidavit attesting to his state of mind because it allegedly contradicts his deposition testimony. Pl.'s Obj. ¶ 6(D). The Court overrules this objection because it finds Lee's affidavit and deposition testimony to be consistent.

22. Philip Morris objects to the portion of Lee's affidavit relating to these issues on the grounds that his statements are conclusory. Pl.'s Obj. ¶ 6(E). The Court overrules this objection because it finds that the statements are based on Lee's personal knowledge.

Summ. J. App. Ex. B, 59; Lee's Resp. to Pl.'s Mot. Summ. J. Lee Aff. ¶ 8.

After reviewing this evidence, the Court finds a genuine issue of material fact exists regarding whether Lee acted willfully. Based on the evidence, a reasonable jury could find Lee believed the cigarettes were authentic. The Court recognizes that Philip Morris has presented evidence that Lee purchased cigarettes well below market price, which may raise an inference of willful blindness. *See Microsoft Corp.,* 129 F.Supp.2d at 1008 (holding that "a suspiciously low price allows an inference of constructive knowledge that merchandise was counterfeit"). However, there is also evidence from which a reasonable jury could find that Lee's lack of experience in cigarette industry accounts for his failure to question the legitimacy of the price. Drawing a reasonable inference in Lee's favor, the Court finds that Lee's retrospective admission that he acted negligently does not establish willful conduct. In addition, a reasonable jury could find that Lee requested and subsequently compared the cigarettes in an effort to conform with the law. Therefore, a fact issue remains concerning the willfulness of Lee's conduct, and summary judgment is inappropriate to the extent that Philip Morris asks for a finding that Lee willfully infringed its mark.

Furthermore, the Court is not in a position at this time to determine whether, and in what amount, statutory damages for non-willful infringement are appropriate against Lee. Philip Morris urges the Court to invoke its discretion and award the $100,000.00 statutory maximum, which amount Lee argues is "unrealistic, draconi-an and punitive." Lee's Resp. to Pl.'s Mot. Summ. J. ¶ 3.[23] Philip Morris fails to identify what factors courts have considered in awarding the maximum amount of damages, as opposed to the minimum, or some other value. Accordingly, the Court denies Philip Morris's request for an award of statutory damages as against Lee.

### 4. Castaneda Acted Willfully

As to Castaneda, the Court finds Philip Morris has presented undisputed evidence that he willfully purchased and imported counterfeit cigarettes. Both Balea and Morrison testified at their depositions that Castaneda knew the cigarettes could not be lawfully imported into the United States. *Id.* App. Exs. C, 153–154; F, 41–47. Castaneda also told Balea that he "wasn't really concerned about" the illegality of the importation, and stated to Morrison that his "contacts in Houston are so strong [that they shouldn't] worry about [the illegality]." *Id.* App. Exs. C, 153–54; F, 47.

There is also undisputed evidence that Castaneda purposely avoided learning of the illegality of his conduct. Specifically, there is no evidence that he sought to verify or confirm the authenticity of the goods despite being alerted as to a potential illegality regarding their importation.

While Castaneda, like Lee, alleges that he "was always under the impression that [the] product was authentic ...," Castaneda's Resp. to Pl.'s Mot. Summ. J. ¶ 8, he fails to substantiate his allegations with an affidavit or any other evidence. His general denial is insufficient to rebut the evidence submitted by Philip Morris. *Turner,* 476 F.3d at 347.

---

**23.** Lee identifies a list of factors which he argues the Court must consider in determining the appropriate amount of statutory damages. Lee's Resp. to Pl.'s Mot. Summ. J. ¶ 4. These factors are relevant to determining "whether an award of profits under § 1117(a) is appropriate." *Rolex Watch USA Inc.,* 158 F.3d at 823. Because Philip Morris does not seek an award of profits under § 1117(a), the Court is not bound and declines to consider these factors.

This case is similar to *Liu,* where the court found that the defendant willfully violated the Lanham Act when he transported counterfeit Marlboro cigarettes. *Liu,* 489 F.Supp.2d at 1124. The court relied on evidence that the defendant failed to question unusual conduct related to transporting the cigarettes. *Id.* Moreover, the court found it "most telling [ ] [that the] [d]efendant completely disregarded a third-party's statement that there was a problem with the shipment, that he would no longer assist with the transloading, and that he suggested [the] [d]efendant do the same." *Id.*

In the present case, in addition to evidence that Castaneda ignored warnings as to the illegal nature of his conduct and failed to confirm whether the cigarettes were authentic, he also decided to partner with Lee despite Lee's lack of familiarity with the cigarette industry. Therefore, the Court finds Philip Morris has established that Castaneda willfully violated the Lanham Act. Because Philip Morris has not identified what factors are relevant in considering whether to award the maximum amount of statutory damages, the Court denies its request for such an award at this time.

### C. Attorney's Fees

The Lanham Act also allows for an award of attorney's fees " 'in exceptional cases.' " *Seatrax, Inc. v. Sonbeck Int'l Inc.,* 200 F.3d 358, 372–73 (5th Cir. 2000) (quoting 15 U.S.C. § 1117). The exceptional case is one in which the defendant's conduct is " 'malicious, fraudulent, or willful,' " and shows " 'a high degree of culpability.' " *Martin's Herend Imports v. Diamond & Gem Trading USA,* 112 F.3d 1296, 1305 (5th Cir.1997) (quoting *Texas*

*Pig Stands, Inc. v. Hard Rock Cafe Int'l Inc.,* 951 F.2d 684, 697 (5th Cir.1992)). "The prevailing party must demonstrate the exceptional nature of the case by clear and convincing evidence." *CJC Holdings, Inc. v. Wright & Lato, Inc.,* 979 F.2d 60, 65 (5th Cir.1992).

Evidence of intentional infringement may establish an exceptional case. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1127 (5th Cir. 1991). However, even where a defendant knew he was using a trademark, the case may not be exceptional if the defendant believed in good faith that he was entitled to use that mark. *Sovereign Order of Saint John v. Grady,* 119 F.3d 1236, 1244 (6th Cir.1997) (cited in *Am. Registry of Radiologic Technologists v. Garza,* No. B–05–287, 2006 U.S. Dist. LEXIS 29826, at *20 (S.D.Tex. May 12, 2006)); *see also CJC Holdings,* 979 F.2d at 65–66 (declining to adopt a rule that deliberate copying of a mark per se constitutes an exceptional case). A finding of willfulness for purposes of awarding statutory damages does not bind a court in determining whether or not a case is exceptional. *Texas Pig Stands, Inc.,* 951 F.2d at 697.

As previously discussed, a genuine issue of material fact exists as to whether Lee acted willfully. *See supra,* III.B(3). Philip Morris does not allege that it suffered lost profits from Lee's conduct. *See CJC Holdings,* 979 F.2d at 66 ("[L]lack of damages is an important factor to consider in determining whether a case is exceptional."). Moreover, there is no evidence Lee profited or financially benefitted from the transaction.[24] *See Moore Bus. Forms v. Ryu,* 960 F.2d 486, 492 (5th Cir.1992) (declining to award attorney's fees where

---

**24.** The Court denies Philip Morris's objection as to Lee's testimony relating to the absence of profits on the grounds that it is conclusory, Pl.'s Obj. ¶ 6(L). None of the statements upon which the Court relies assert conclusions of either fact or law. Rather, they are statements based on Lee's personal knowledge.

"there is no evidence that [the defendant] attempted to gain benefit or advantage by using [the plaintiff]'s trademark."). Thus, the Court finds a genuine issue of material fact as to whether the case against Lee is exceptional, and denies Philip Morris's request for an award of attorney's fees against Lee.

■■■ As to Castaneda, in addition to evidence that he willfully violated the Lanham Act, there is also clear and convincing evidence that he acted with a high degree of culpability. Unlike Lee, Castaneda was repeatedly told he could not lawfully import the cigarettes into the United States. Pl.'s Mot. Summ. J. App. Exs. C, 153–54; F, 41–47. Courts have declined to award attorney's fee where the defendant believed in good faith that he was entitled to use the plaintiff's trademark. *See, e.g., Pebble Beach Co.*, 155 F.3d at 556 (declining to award attorney's fees where the defendant deliberately copied a mark but also placed a disclaimer on the goods bearing the mark, which the court concluded demonstrated a lack of an intent to deceive or cause confusion); *Am. Registry of Radiologic Technologists*, 2006 U.S. Dist. LEXIS 29826, at *20 (declining to award attorney's fees where the defendant believed in good faith that the trademark owner certified his use of its marks). Castaneda, in comparison, acted in bad faith by disregarding notice that his conduct was unlawful. Accordingly, the Court finds this case to be 'exceptional' with regard to Castaneda, and grants Philip Morris's request for an award of attorney's fees against Castaneda.

### D. Costs of Court

Under the Lanham Act, a plaintiff whose trademark has been infringed "shall be entitled" to recover costs. 15 U.S.C. § 1117(a). Accordingly, the Court awards Philip Morris the costs of court it incurred in prosecuting its case against Lee and Castaneda.

### V. CONCLUSION

For the foregoing reasons, the Court enters judgment in favor of Philip Morris and against Defendants Lee and Castaneda. The Court finds that Philip Morris is entitled to a permanent injunction prohibiting Lee and Castaneda from importing, purchasing, distributing, selling, offering for sale, or otherwise using in commerce any counterfeit cigarettes bearing the Marlboro Marks, or in assisting, aiding, or abetting any other person or entity in doing so. In addition, the Court awards Philip Morris attorney's fees associated with the prosecution of its case against Castaneda. Finally, the Court the finds that Philip Morris is entitled to costs against both Lee and Castaneda.

Accordingly, **IT IS ORDERED** that Plaintiff Philip Morris USA Inc.'s "Motion for Summary Judgment Against Defendants William W. Lee and Felipe Castaneda" (Docket No. 229) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that judgment is entered in favor of Plaintiff Philip Morris USA Inc. against Defendants William W. Lee and Felipe Castaneda as to Counts I–VI.

**IT IS FURTHER ORDERED** that Plaintiff Philip Morris USA Inc. is **GRANTED** a permanent injunction against Defendants William W. Lee and Felipe Castaneda, prohibiting them from importing, purchasing, distributing, selling, offering for sale, or otherwise using in commerce any counterfeit cigarettes bearing the Marlboro Marks, or in assisting, aiding, or abetting any other person or entity in doing so.

**IT IS FURTHER ORDERED** that Plaintiff Philip Morris USA Inc. is

GRANTED statutory damages and attorney's fees against Defendant Felipe Castaneda.

IT IS FURTHER ORDERED that Philip Morris is ordered to FILE with the Clerk of the Court declarations concerning the amount of attorneys' fees incurred in prosecuting its case against Castaneda pursuant to Local Rule CV–7(I).

IT IS FURTHERED ORDERED that Plaintiff Philip Morris USA Inc. is awarded all recoverable costs of court in the prosecution of its case against Defendants William W. Lee and Felipe Castaneda.

IT IS FURTHER ORDERED that Plaintiff Philip Morris USA Inc.'s Motion is DENIED insofar as it requests statutory damages and attorney's fees against Defendant William W. Lee.

IT IS FINALLY ORDERED that at the BENCH TRIAL set for December 17, 2007, in the above-captioned cause, the parties MAY SUBMIT evidence regarding whether, and in what amount, statutory damages and attorneys fees are appropriate against as Lee, as well as the appropriate amount of statutory damages against Castaneda.[25]

IT IS FURTHER ORDERED that Plaintiff Philip Morris USA Inc.'s "Objections to Affidavit of Defendant William W. Lee and Motion to Strike" are SUSTAINED in part and OVERRULED in part, as set forth above.

---

25. On May 21, 2007, the Court entered a Scheduling Order setting the case for a bench trial on December 17, 2007. *See* Docket No. 184. On December 6, 2007, the Court sent a letter to counsel for both parties indicating that the case would proceed to trial on the aforementioned issues. *See* Docket No. 258. A bench trial was held December 17–18, 2008, and this Memorandum Opinion and Opinion is issued thereafter.